TRICE & LUDOLPH v. CONE et al.

(Court of Civil Appeals of Texas. San Antonio. Jan. 21, 1914. Rehearing Denied Feb. 18, 1914.)

1. BROKERS (§ 88*)—ACTIONS FOR COMMISSION —FINDING.

In an action for commissions for assisting in procuring sale of land, under a contract providing that plaintiff should send to defendant such persons as he could interest in purchasing East Texas lands, and that defendant should pay plaintiffs one-half of the commission derived from sale of such lands to such persons, the jury answered "Yes" to a special interrogatory whether plaintiff firm made an agreement with defendant by which it was to send to defendant such parties as they might be able to interest in the purchase of East Texas lands, and by which defendant agreed to pay to plaintiffs for their services, in so sending purchasers one-half of the commissions or profits derived from such sales. Interrogatory 4 directed the jury to find whether when a certain tract was sold defendant had any agreement with the plaintiffs to pay them any part of the commissions earned by the defendant in the sale of such tract, and to state what the agreement was, and particularly whether it was an agreement as to the particular tract or merely that defendant would divide the commissions earned in the sale of any East Texas land to purchasers sent by plaintiffs, without such agreement specifying any particular amount, to which the jury answered that plaintiffs' firm had no specific agreement with defendant when the particular tract was sold, but that it had an agreement with defendant to divide the profits on any East Texas lands sold to any one whom plaintiffs sent to defendant, and that the agreement did not specify any particular amount, but the parties understood that an equal division of the profits should be allowed to plaintiffs. *Held,* that the answers to the interrogatories were contradictory so far as they related to the compensation to be paid plaintiff, so that judgment should not have been rendered for either party, but the verdict for defendant should have been set aside.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 88.*]

2. BROKERS (§ 66*)—COMMISSIONS—CONTRACT.

Where defendant agreed to pay plaintiffs half of the commissions on the sale of any East Texas land to parties sent to defendant by plaintiffs, it was not necessary to entitle plaintiffs to recover commissions that the purchaser sent to defendant intended to purchase a particular tract.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 51; Dec. Dig. § 66.*]

3. BROKERS (§ 66*)—COMMISSIONS—PERFORMANCE OF CONTRACT.

Where defendant agreed to pay plaintiffs half the commissions received upon the sale of any East Texas land to purchasers sent to defendant by plaintiffs, the fact that such a purchaser first considered a tract other than that for the sale of which commissions are claimed would not prevent plaintiffs from recovering commissions, where the purchaser afterward negotiated for the sale of such other tract and purchased them both.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 51; Dec. Dig. § 66.*]

4. BROKERS (§ 66*)—RIGHT TO COMMISSIONS.

Where defendant agreed to divide with plaintiffs the commissions on the sale of any East Texas land to any persons sent to defendant by plaintiffs, plaintiffs could recover commissions for a sale made by defendant to a purchaser sent by plaintiffs, irrespective whether the land was listed with defendant for sale when the purchaser went to examine it.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 51; Dec. Dig. § 66.*]

5. BROKERS (§ 66*)—COMMISSIONS.

Where the purchaser sent by plaintiffs to defendant to look at lands actually purchased the lands, it was immaterial whether, prior to the sale, the purchaser was ready and willing to buy the tract afterwards purchased, or that he first negotiated for the purchase of another tract, in order to entitle plaintiffs to commissions under a contract by defendant to pay plaintiffs commissions on any purchases of East Texas land by purchasers sent by plaintiffs.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 51; Dec. Dig. § 66.*]

6. NEW TRIAL (§ 73*)—GROUNDS—CONFLICTING INTERROGATORIES.

Where, in an action for commissions for assisting to procure the sale of land, answers to the special interrogatories whether defendant agreed to pay plaintiff half the commissions as alleged were conflicting, a verdict should have been set aside and a new trial ordered.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 149; Dec. Dig. § 73.*]

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Trice & Ludolph against Adam Cone and another. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

Ben H. Kelly and McCollum & Burnett, all or San Antonio, for appellants. Denman, Franklin & McGown, and W. W. Walling, all of San Antonio, for appellees.

MOURSUND, J. Appellants, as successors of the firm of Stone, Trice & Ludolph, real estate agents, sued appellees, alleging that about January 1, 1911, appellee Cone was in the real estate business at Palestine, Tex., and appellee Lindheim at San Antonio; that about said date Stone, Trice & Ludolph made an agreement with Cone to send him such parties as they might be able to interest in lands in East Texas; and Cone promised them that if he made a sale of East Texas lands to any such parties so sent to him, he would pay Stone, Trice & Ludolph one-half of such commissions or profits as he might derive from the sale of such lands to said parties; that thereafter it was further agreed that if it became necessary to secure the assistance of another agent in procuring a purchaser or purchasers for lands controlled by Cone, the commission derived by Cone should be divided into three equal parts, one of which would be retained by Cone, one would go to Stone, Trice & Ludolph, and the other to such other agent; that Stone, Trice & Ludolph induced one Lovett to go to Cone about February 24, 1911, as the representative of W. W. Vaughn; that Lovett inspected several tracts of land Cone had for sale, one of which was known as the "Huffman" tract, and thereafter Lovett induced Vaughn to go to Cone, about May 1, 1911, to inspect said tract of land, which resulted in Vaughn purchasing the same about August 19, 1911; that Lovett was introduced to plaintiffs by Lindheim, and the latter sold plaintiffs his interest in all commissions due him by Cone by reason of the sale of the Huffman tract of land, and guaranteed the payment thereof by Cone; that Cone made a profit or commission upon the sale of said tract of land amounting to $3,029.50, of which plaintiffs are entitled to the sum of $2,019, for which amount, with interest, they prayed judgment against Cone and Lindheim.

Cone answered by a general denial, and a special answer alleging that said tract of land was not sold to any person brought to him by any member or agent of the firm of Stone, Trice & Ludolph; that at the time Vaughn bought what is known as the Barrett tract of land the Huffman tract belonged to L. J. Huffman, and the title thereto was defective; that Vaughn never offered to purchase said land from Huffman, nor was he at any time ready or willing to purchase the same from Huffman; that the Huffman tract was not at the time listed with Cone for sale, and about May 11, 1911, Cone secured from Huffman an option to buy said land at any time prior to Jan. 1, 1911, at $11 per acre agreeing, in consideration for said option, to remove all defects from the title

to said land prior to Jan. 1, 1911; that Cone sold said land to Vaughn, and was required to give bond to Vaughn, conditioned that he should at his (Cone's) expense cause all defects to the title to said land to be removed on or before July 1, 1912, and deliver possession of all of the land to Vaughn by Jan. 1, 1912, except two small parcels which were in the inclosures of other persons; that Cone was required to expend and did expend various sums aggregating $939.50 in clearing up said title, the expenditures being set out in detail, and there were still some claims to the land which he had been unable to buy, nor could he state what the expense would be to complete the clearing of the title; that plaintiffs could in no event recover commissions for the sale of the Huffman tract without making allowance for the expenditures so made and those necessary to be made to clear the title.

Lindheim admitted the material allegations of plaintiffs' petition, and alleged that his share of the commission was $1,009.50, and that he was liable to plaintiffs for his share of such commission if they did not obtain same from Cone. He prayed that plaintiffs recover from him not exceeding one-half of the amount claimed by plaintiffs against him, and that if any judgment be given plaintiffs against him, then that he have judgment over against Cone for the same amount.

By supplemental petition plaintiffs urged various exceptions to Cone's answer, and, replying thereto, alleged that any option taken by Cone on said land was for the purpose of holding it for sale until it could be sold for a commission or profit to Vaughn, or some one else, for the benefit of the partnership; that all expenses paid by Cone were chargeable to him individually, according to their agreement with him; that said expenses were not incurred in perfecting the title to the Huffman tract; that if plaintiffs are held liable for any expenses paid, such liability is only to the extent of their pro rata share of the reasonable and necessary expenses, which share they are willing to have credited upon their claim, as well as their share of the expenses which might be necessary to complete the clearing of the title.

The case was submitted to the jury upon special issues, which, with the answers thereto, were as follows:

"Question No. 1: Did the firm of Stone, Trice & Ludolph, or did they not, on or about January 1, 1911, make an agreement with defendant Adam Cone by the terms of which said Stone, Trice & Ludolph were to send defendant Cone such parties as they might be able to interest in the acquisition of lands in East Texas, and if defendant Cone succeeded in making a sale of East Texas lands to any such party or parties the said firm might send him, the said Cone would pay to said firm, for their services in so sending

such purchaser or purchasers to him, one-half of whatever commission or profit he might derive from the sale of any such lands so sold to such purchaser or purchasers, sent by said firm to defendant Cone? Answer: Yes.

"Question No. 2: Was it, or was it not, stipulated in the agreement between the firm of Stone, Trice & Ludolph and defendant Adam Cone that any and all expenses and liabilities paid out or incurred by said Cone in connection with said agreement should be borne and paid by said Cone, and that no part of such expense should be chargeable to said firm? Answer: No.

"Question No. 3: Did plaintiffs, or Stone, Trice & Ludolph, send Vaughn, or induce him to go (directly or through Lovett as Vaughn's agent), to purchase the Huffman tract specifically? Answer: No.

"Question No. 4: You will find by your verdict whether, at the time the Huffman tract was sold to Vaughn, the defendant Cone had any agreement with Trice & Ludolph to pay said Trice & Ludolph any part of the commissions that might be earned by the defendant Cone in the sale of said tract, and state in your verdict what the agreement was, particularly whether it was an agreement that had reference to the Huffman tract particularly, or whether it was an agreement that Cone would make some fair division of any commissions earned by him in the sale of any East Texas land to purchasers sent him by plaintiffs, without such agreement specifying any particular amount of such commissions so to be allowed to plaintiffs. Answer: The firm of Trice & Ludolph had no specific agreement with defendant Cone, at the time that deed was passed to Vaughn on the Huffman tract, but that Trice & Ludolph had an agreement with Cone whereby Cone was to make a fair division of profits on any East Texas lands that may have been sold to any one that Trice & Ludolph may have been instrumental in sending to Cone, introducing or otherwise getting Cone in touch with. This agreement did not specify any particular amount, but it is the finding of the jury that they understand it to be an equal division of such commission or profits so to be allowed plaintiffs.

"Question No. 5: You will find by your verdict whether Vaughn, before he purchased the Huffman tract, had declined to buy said Huffman tract, and had selected the Barrett tract as the tract of land in Anderson county he desired to purchase. Answer: We find that Vaughn declined to buy the Huffman tract and selected the Barrett tract.

"Question No. 6: How much commission did defendant Adam Cone receive from the sale of the 'Huffman' tract? Answer: Twenty hundred and nineteen dollars ($2,019.00).

"Question No. 7: What was the total amount, if any, paid out or contracted to be paid out by defendant, Adam Cone, for clearing up the title to the Huffman tract? Answer: Eight hundred sixty-four and $50/100$ ($864.50).

"Question No. 8: Has the title to the Huffman tract, or has it not, been fully cleared by the defendant Adam Cone, or are there other interests to be acquired by him in order to clear the title? Answer: The title has not been cleared. There are other interests to be acquired.

"Question No. 9: Are any further expenses to be incurred in clearing title to said Huffman tract? If so, how much? Answer: Yes. $37.50.

"Question No. 10: Find by your verdict whether the Huffman land was listed with Adam Cone for sale by Huffman, the owner, when Lovett first went to Palestine to look at the Barrett and other lands in Anderson county. Answer: No."

Upon these findings the court entered judgment that plaintiffs take nothing against Cone, reciting that "the court, upon a review of the evidence being of the opinion that the evidence wholly fails to show performance of their contract by Stone, Trice & Ludolph, as alleged, and that the court should therefore have instructed a verdict for the defendant Cone, it is therefore ordered, adjudged, and decreed by the court that plaintiffs, Trice & Ludolph, take nothing as to the defendant Cone," etc.

By the first and third assignments appellants attack the judgment of the court as unauthorized because contrary to the verdict of the jury. We have carefully read the statement of facts, and conclude that the court erred in rendering the judgment above described, for the following reasons:

[1] 1. By answering the first issue in the affirmative, and also by the answer to the fourth issue, the jury found that the terms of the contract were as alleged by plaintiff in so far as the same related to what was to be done by plaintiffs to entitle them to a commission.

2. It cannot be said that the jury found that the contract was not proven in so far as it related to the compensation alleged to have been agreed to be paid, because the answers to issues 1 and 4 are contradictory on this point.

[2] 3. It was not necessary, under the contract alleged and testified to by plaintiffs, to prove that plaintiffs sent or induced Vaughn "to go to purchase the Huffman tract specifically," and therefore issue No. 3 related to an immaterial matter, and the answer does not aid Cone.

[3] 4. The fact that Vaughn, after looking at both the Barrett and Huffman tracts, decided in favor of the Barrett tract, and at the time rejected the Huffman tract, would not prevent appellants from recovering a commission upon the sale of the Huffman tract, the evidence showing that, even before the

sale of the Barrett tract was closed, Vaughn was negotiating for the sale of the Huffman tract, and bought it about two months after examining it. Special issue No. 5, therefore, related to an immaterial matter, and the answer thereto did not aid Cone.

[4] 5. Special issue No. 10 was immaterial. It was not alleged that the contract related only to lands in Cone's hands at the time Lovett went to see him, on the contrary, plaintiffs alleged that it was a general contract relating to the sale of East Texas lands to any persons sent to Cone by plaintiffs, and the evidence is sufficient to support a finding to that effect.

6. The issue whether the contract was performed by plaintiffs was not submitted, although plaintiffs requested its submission, though in the form of a charge instead of a special issue. We do not regard the evidence upon this issue as undisputed, as found by the court. On the contrary, we think it is sufficient to support a finding that plaintiffs complied with the contract alleged and testified to by them, in sending Lovett, as Vaughn's agent, to Cone to look at East Texas lands, which resulted in Vaughn looking at the Barrett and Huffman tracts, and buying both from or through Cone within a short time thereafter.

We cannot agree that under the contract pleaded by plaintiff it became necessary for him to show the things contended for by appellee, as follows: (a) That they sent Lovett to Palestine to look at lands in Cone's hands for sale; (b) that the Huffman tract was in Cone's hands for sale at that time; (c) that Lovett induced Vaughn, his principal, to buy the Huffman tract; (d) that Lovett's principal, Vaughn, was at the time Lovett was sent to Palestine a prospective purchaser, not only for the Barrett tract, but for the Huffman tract, or at least a prospective buyer for two tracts of East Texas lands in the hands of Cone for sale, and that he was ready, willing, and able to buy any lands he might select from the lands of Cone; (e) that Vaughn purchased, through Lovett, the Barrett tract, and did not refuse to buy the Huffman tract, but held the matter in abeyance and subsequently purchased same without any new intervening cause operating on him to make such promise. These elements cannot be added to the contract by the courts. The petition contains the allegation that the contract was for Stone, Trice & Ludolph to send to Cone such parties as they might be able to interest in the acquisition of East Texas lands, and Cone promised them that, if he succeeded in making a sale of East Texas lands to any such party or parties as they might send to him, he would pay them, for such services in so sending said parties, one-half of the commission or profits he might derive from the sale of said lands. The contract was not limited to lands then listed by Cone, and it was not necessary to send parties to Cone to buy lands then listed with him, but merely East Texas lands. The contract did not provide that plaintiffs should induce any one to buy the lands, but should merely send the parties to Cone. If plaintiffs caused Lovett, as agent of Vaughn, to see Cone, who showed him the Huffman tract as well as the Barrett, and Cone sold him both tracts, we fail to see why it should be necessary that Lovett induced Vaughn to buy the Huffman tract. If Lovett, after getting Vaughn to look at the two tracts, had tried his best to get him not to buy either of them, Cone would not be relieved of his contract with plaintiffs.

[5] It was alleged that Vaughn actually bought land, so it was unnecessary to go into the abstract question, whether he was at some time prior thereto ready, willing, and able to buy. Nor would plaintiffs' rights be lost by Vaughn's temporary refusal to take the land, when the facts show that, even before the Barrett deal was fully closed, and contrary to the advice of Lovett, who had made an agreement with Cone to divert from plaintiffs to himself the commission on the Huffman tract, Vaughn bought the said tract, and because Lovett was his paid agent to seek land bargains for him, required the deduction from the price of the 50 cents per acre which Cone and Lovett had arranged for the latter to receive.

This case does not come within the rule laid down in the case of Fant v. Sullivan, 152 S. W. 515, because the evidence on the issue whether plaintiffs performed their contract would not have justified the court in instructing a verdict against plaintiffs.

[6] As there was a conflict in the findings of the jury upon the material issue whether Cone agreed to pay one-half of the commission or profits, as alleged, the court would not have been authorized to render judgment for plaintiffs, but should not have rendered judgment for Cone. The verdict should have been set aside and a new trial granted. Brown Hardware Co. v. Catrett, 45 Tex. Civ. App. 647, 101 S. W. 559; Eastham v. Patty, 37 Tex. Civ. App. 336, 83 S. W. 885.

The judgment is reversed, and the cause remanded.