BAUER et al. v. CROW.    (No. 349.)

(Court of Civil Appeals of Texas. El Paso. Nov. 5, 1914. Rehearing Denied Dec. 3, 1914.)

1. APPEAL AND ERROR (§ 395*)—JURISDICTION —APPEAL BOND.
Under Rev. St. 1895, art. 1025, providing that, where there is a defect of substance or form in any appeal or writ of error bond, the court may allow it to be amended, a defective bond gives the Court of Civil Appeals jurisdiction on appeal.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2058, 2064–2070, 2085, 2086, 3127; Dec. Dig. § 395.*]

2. BROKERS (§ 86*) — COMMISSIONS — AGREEMENT FOR DIVISION—EVIDENCE.
In an action for a share in commissions which plaintiff claimed he and defendant were to divide, evidence held to establish the agreement that the two who were real estate brokers should equally divide any profits or commissions earned in a certain sale.
[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

3. BROKERS (§ 66*)—COMMISSIONS—RIGHT TO.
An agreement between two brokers that they should equally divide commissions in the event of effecting a certain sale is enforceable by one of them, even though he had no agency to sell the lands involved.
[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 51; Dec. Dig. § 66.*]

4. BROKERS (§ 66*)—COMMISSIONS—RIGHT TO.
Where two brokers agreed that in the event of making a certain sale they would divide the commissions, and one of them introduced the parties and started the negotiations, he is entitled to his share of the commission, though he performed no further act; it appearing that nothing else was required of him.
[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 51; Dec. Dig. § 66.*]

5. BROKERS (§ 66*)—COMMISSIONS—RIGHT TO.
Where plaintiff and another broker agreed to divide commissions from a stipulated sale, plaintiff's rights in a note for the commission are superior to those of one who became the partner of the other broker after the agreement as well as to rights based on a decree in an action between the other broker and his partner to which plaintiff was not a party.
[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 51; Dec. Dig. § 66.*]

Harper, C. J., dissenting, on rehearing.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by J. W. Crow against Paul Bauer, William Barbee, and another, in which the First National Bank and another filed separate interventions. From a judgment for plaintiff, William Barbee and another appeal. Affirmed.

John B. Warren, N. G. Kittrell, Jr., and Moody & Boyles, all of Houston, for appellants. Stewarts, S. H. Brashear, and R. W. Houk, all of Houston, for appellee.

WALTHALL, J. [1] Appellee's first position in his brief filed in this court questions the jurisdiction of this court to hear and determine this cause on its merits, for the reason that the judgment in the trial court was rendered in favor of appellee against Paul Bauer, individually, for $3,812.50 and for a lien on a $2,000 note and for the foreclosure of same against defendants Paul Bauer, Wm. Barbee, and J. W. Hazzard, receiver, and against Mrs. N. W. Johnson and the First National Bank of Houston, Tex., while the appeal bond of appellants, Hazzard and Barbee, the only defendants appealing, was not made payable to Paul Bauer, who did not appeal and whose interests, appellee claims, are adverse to appellants appealing. It is suggested that, if the said note is adjudged to appellee, his judgment to the extent of the value received on the note will be reduced to that extent, while, if it is adjudged to the bank, the judgment against Bauer will receive no credit. We think it unnecessary to enter into a discussion of the sufficiency of the appeal bond to give this court jurisdiction. Revised Statutes 1895, art. 1025, provides that when there is a defect of substance or form in any appeal or writ of error bond, on motion to dismiss the appeal for such defect,

the court may allow the same to be amended by filing in the Court of Civil Appeals a new bond on such terms as the court may prescribe. In Hugo et al. v. Seffel et al., 92 Tex. 414, 49 S. W. 369, our Supreme Court, in construing article 1025, said that:

"Since the passage of the statute quoted, a defective bond is sufficient to give the Court of Civil Appeals jurisdiction over the appeal."

We are of the opinion that, should appellee desire to question the sufficiency of the appeal bond or the jurisdiction of the court on account of any supposed defect in the bond, the article of the statute referred to and Court of Civil Appeals rules 8 and 9 would require that a motion be filed in calling in question the sufficiency of the bond, so that appellants, in the event the court sustained appellee's contention, could file a sufficient bond on such terms as the court might require.

This suit was brought by the appellee, J. W. Crow, in the district court of Harris County, Tex., and, after a number of amendments, resulted in making defendants Paul Bauer, W. L. Barbee, the firm of Paul Bauer & Co., composed of W. L. Barbee and Paul Bauer, and John W. Hazzard, as receiver of the partnership assets of Paul Bauer & Co.; Mrs. N. W. Johnson and the First National Bank of Houston filed separate interventions. Plaintiff alleged, in substance, that on May 7, 1909, he and the defendant Paul Bauer were engaged in the real estate brokerage business in Harris county and formed a special partnership under an agreement that they would share equally the profits on any sale that might be made by either party (Crow or Bauer) to F. A. Ogden; that Crow submitted to Bauer a proposition of sale of the Milton H. Smith land, of which land Chas. V. Moling was then the agent and that Bauer remarked that the land was just what he wanted for Ogden; that a meeting between Moling, Bauer, and Crow was had, at which it was agreed that in case a sale of the Smith land should be effected the profits should be divided one-third to each; that the price asked by the agents for the land was $63,000, which would give $13,000 net profits to Moling, Bauer, and Crow; that thereafter, on or about the 25th day of May (1909), and after the land had been offered to Ogden, and while the sale was pending with him, the agreement for a division of profits was modified and readjusted, whereby Bauer was to receive $4,000, the Moling Company $4,000, Crow $3,000, and A. B. Mays $2,000; that thereafter the securities offered in part payment by Ogden were found to be not acceptable to the seller, and the sale on the terms contemplated was not consummated, but the efforts to sell the same land to the same purchaser were not abandoned; that after the securities offered by Ogden were found to be not acceptable to the seller, about June 9 (1909), Bauer stated to Crow that by making a reduction in the price to be paid for the land he was still satisfied they could get Ogden to raise the money and take land; and that it was agreed that he, Bauer, and Crow, would continue in their partnership agreement, and, acting in conjunction, would make efforts to sell said land to Ogden and be in the deal together and divide equally between them whatever profit was made by either party. Plaintiff further alleged that, as a result of their joint efforts, the sale of the Smith land to Ogden was shortly thereafter consummated, for $61,000, which gave a profit of $11,000 to the agents; that out of said profits Bauer paid to Moling $2,625 as his share, leaving the net amount received to be divided between Bauer and Crow of $8,375, and that no part of it had ever been paid to him. Plaintiff further alleged that, during the transactions covering the sale of the land, defendant Wm. Barbee was a silent partner of Bauer in conducting a real estate brokerage business under the names of Paul Bauer and Paul Bauer & Co.; that Barbee authorized and ratified all of said agreements made between Bauer and Crow; that said agreements were made for the use and benefit of said Bauer and Barbee, and that Barbee participated in the profits of the sale; that the partnership relation between Bauer and Barbee was unknown to plaintiff until after the sale to Ogden had been closed and the commission earned. Plaintiff alleges that said $11,000 profit on the sale of said land was paid by Ogden as follows: $9,000 in cash, and $2,000 in the form of a promissory note executed by Ogden and payable to Smith (the owner of the land) and indorsed by Smith; that, after paying Moling as stated, there remained to be divided in cash the sum of $6,375 and the $2,000 note. Plaintiff alleges that about July 6, 1909, defendants Bauer and Barbee collected and wrongfully appropriated to their own use of said profits the sum of $6,375 in cash, which plaintiff alleges to be $2,187.50, in excess of Bauer and Barbee's half of the whole profit, for which plaintiff prays judgment, and, in addition, plaintiff prays judgment for the said $2,000 note now in the hands of John W. Hazzard, receiver. Plaintiff alleges that, by reason of the defendants having received to their own use all of the cash paid, they are now estopped from asserting any interest in or title to the said note, which plaintiff alleges was worth its face value, and that said note rightfully belongs to plaintiff; that he has an equitable lien on said note; and that he elects to take same at its true value at the time of the closing of the sale as part of his share of the commission of said sale. Plaintiff alleged that the partnership of Barbee and Bauer was at an end; that since the filing of this suit the court in which this suit was pending rendered judgment in another cause, to wit, No. 49,330, Barbee v. Bauer, and in which plaintiff was not a party and in which cause John W. Hazzard was appointed receiver, and directed to take charge of said note and

dispose of same; that said note and other partnership effects of said Barbee and Bauer are now in the possession of said receiver and should be applied to the satisfaction of any judgment rendered herein. Plaintiff dismissed as to the Houston National Exchange Bank.

Defendants Bauer and interveners Mrs. N. W. Johnson and First National Bank of Houston do not appeal, and it will be unnecessary to state their pleadings or issues made on the trial.

Defendant W. L. Barbee presented general and special exceptions to Crow's petition and answered alleging, in substance, as follows: Denies partnership between plaintiff and Bauer; denies partnership between plaintiff, Bauer, and himself; denies that he was a silent partner of Bauer; alleges a general partnership with Bauer on and after June 10, 1909; denies authority of Bauer to the agreement alleged by plaintiff with reference to the disposition of profits; denies that he authorized or ratified agreement alleged; denies that he participated in the profits of said sale with knowledge that Bauer had made alleged agreement with plaintiff; that the contemplated sale to Ogden had been abandoned before his partnership with Bauer; alleges that the contract of June 21st, between Bauer and Moling, was made on behalf of himself and Bauer, and that by their efforts sale was made to Ogden and profits received (except note) without any knowledge on his part of any agreement between Bauer and Crow; alleges that, after his partnership with Bauer was dissolved, all assets of the firm by decree of court were placed in hands of Receiver Hazzard, who still retains same; that in cause No. 49,330, Barbee v. Bauer, an accounting was had between himself and Bauer, and it was adjudged that Bauer was indebted to him in the sum of $2,506.96; that he was jointly interested in and owned the partnership assets, including the said $2,000; that by said decree it was kept open and receiver ordered to pay all costs, the creditors of the partnership as established to pay one-half of the funds to him (Barbee), and such remaining moneys not to exceed Bauer's indebtedness to him on said accounting; alleges that Bauer and himself on their own responsibility obtained from Moling an option on the Smith land for a consideration of $2,625, and by their joint efforts sold to Ogden at a profit of $5,625 cash and the $2,000 note; alleges debts in excess of said note, and defendant asserts a superior equitable lien on said note in that it was a partnership lien; alleges that after paying partnership creditors there would be no funds in hands of receiver or himself belonging to Bauer; denied the authority of the court to interfere with the possession of said note or to render any decree subjecting said note to a judgment in the case; alleges that if Crow ever had any agreement with Bauer it was with-

out consideration, as he had no interest in the Smith lands and had no right to sell or offer same for sale; that Bauer with the knowledge of Crow entered into said partnership with him (Barbee), and that Crow remained silent and permitted him and Bauer as partners to negotiate for and obtain due right to sell said lands and to sell same at their own expense and that Crow never at any time informed him (Barbee) of his right to participate in the profits arising from the sale until after same had been consummated and the moneys collected; denies that Crow ever had any agreement with Bauer other than expressed in the writing attached to the answer and that all prior negotiations were merged in said writing, that the deal of May 25, 1909, for the sale of said lands, in which Moling & Co. agreed to pay Crow $3,000 out of the profits accruing to said Moling & Co., was declared off and the contract annulled; alleges that, a few days before the Moling Company abandoned the said contract of May 25th, Moling individually bought the land from Smith by contract of date May 29, 1909; alleged that without any knowledge of Crow's connection with or interest in the sale of said lands he (Barbee) and Bauer, on June 21, 1909, obtained from Moling in open market an assignment of such interest as he had in said lands by reason of his (Moling's) contract of purchase from Smith, and made the sale to Ogden; and defendant Barbee says that by reason of the facts alleged Crow had no interest in the said note or assets of Paul Bauer & Co. and no right to subject same to any demand he may have against Bauer.

Receiver Hazzard adopted the answer of Barbee as his own in part and pleaded the orders of the court in the matters affecting his receivership and said note. The court submitted the case to the jury on special issues, and the jury answered, in substance:

(1) That the plaintiff Crow and defendant Paul Bauer, on June 9, 1909, agreed between themselves that they would work together and close the deal and divide equally whatever profit or commission was made by them on the trade with Ogden.

(2) That the plaintiff Crow, after the execution of the written contract of May 29, 1909, between Milton H. Smith and C. B. Moling, did not have or obtain any authority to sell or to offer for sale the Milton H. Smith lands.

(3) That defendants Barbee and Bauer formed a partnership in the real estate business on June 10, 1909.

(4) That the plaintiff Crow knew of the existence of the partnership in the real estate business of Bauer and Barbee at and prior to the execution of the contract between Moling and Bauer on June 21, 1909.

(5) That the defendant Barbee did not know at the time of the making of the contract of June 21, 1909, between Bauer and

Moling, of any agreement between Crow and Bauer to divide the profits of that deal.

(6) That Barbee did not know on June 21, 1909, or prior thereto, of any right of Crow to participate in the profits on the sale made to Ogden for the Smith lands other than as set out in the written contract of May 25, 1909, between the Charles B. Moling Company, party of the first part, and Paul Bauer, party of the second part.

(7) That Barbee did not know of the agreement, if any, between Crow and Bauer to divide the profits on the sale of the Smith lands to Ogden at the time he (Barbee) divided with Bauer the cash received on the deal.

(8) That Crow did nothing personally towards effecting the actual sale made to Ogden of the Smith lands subsequent to June 9 and prior to June 21, 1909.

(9) That Barbee and Bauer, acting together and alone, made the sale of the Smith lands to Ogden.

In addition to the findings of the jury on the special issues submitted to them, we make the following additional findings, which we think the pleadings and the evidence warrant, and the trial court in effect found: That Bauer and Crow entered into an agreement on May 7, 1909, modified and readjusted at different times to suit the changes and circumstances, as they arose, but always referring to the division of the profits on the sale of lands to Ogden; that Crow and Bauer at once acted upon the agreement they had made on May 7th, in selling lands to Ogden, and on the same day by mutual parol agreement specified the Smith lands as the lands they would sell to Ogden; that Crow at once found the agent Moling who had for sale the Smith lands; that the proposition of the sale of the lands to Ogden was submitted to him (Moling) before Barbee formed his partnership with Bauer; that the Smith lands were sold to Ogden at a profit of $9,000 cash and the $2,000 note; and that, after paying Moling his part of the commission, there remained of the net profits to be divided $5,625 and the $2,000 note; that defendants Bauer and Barbee collected and appropriated the $5,625 cash; that the $2,000 note is now in the custody of Receiver Hazzard by agreement of the parties until further ordered by the court in this cause; that the note has never been in the custody of either Bauer or Barbee, but was in the possession of the bank where originally placed and turned over by the bank to the receiver, Hazzard, by agreement of the parties to this suit. The several contracts of May 7th, between Crow and Bauer, and the parol agreements between Crow and Bauer specifying the Smith lands as the lands mentioned in their contract to be sold to Ogden; the contract of May 25th, between Moling, Bauer, and Crow, recognizing and dealing with Moling as agent of the Smith lands to be sold to Ogden and stating terms of sale; con-

tract between the Chas. B. Moling Company, acting by C. B. Moling, and Bauer, reciting conditional sale of the Smith lands to Bauer and reciting certain securities to be given as part of the purchase money in event of sale; that Moling refused to accept the securities when offered; the contract of May 29th between Smith and Moling for the option, contract, or sale of the Smith lands to Moling; the contract of June 21st with the addenda, reciting the Moling option contract for sale of the Smith lands, and that Bauer had a prospective buyer on the option contract terms, and reciting the commission to be paid Moling in event of a sale, assigned the option contract to Bauer, that Moling took the option contract from Smith on the representation of Bauer and Crow that they could sell the land, evidently to Ogden.

Defendants Barbee and Hazzard filed motion for judgment which the trial court overruled, and on plaintiff's (Crow's) motion the court entered judgment in favor of plaintiff Crow against Bauer, personally, for $3,812.50 interest, and that plaintiff have judgment against Barbee and Bauer individually and as partners and against Hazzard as receiver of the $2,000 note, subject to the orders of the court, and against Mrs. Johnson and the First National Bank of Houston, fixing and foreclosing a lien on said note in favor of plaintiff, to secure the payment to plaintiff of said $3,812.50, and judgment against Bauer for any balance remaining unpaid, ordered Hazzard to deliver the note into the registry of the court, appointed special commission to sell the note and apply the proceeds to payment of the judgment, and that Mrs. Johnson and the First National Bank of Houston take nothing, and awarded costs.

The appellants, by proper assignments of error, call in question the action of the court in overruling the general and special demurrers of defendants and in refusing to give peremptory instruction to jury to find for defendants, and calling in question the sufficiency of the evidence to support the judgment against Barbee for foreclosure of a lien on the $2,000 note; action of the court in excluding as evidence the pleadings and evidence of Barbee in his suit with Bauer for an accounting as partners, claiming that the evidence was material, in that it would show that upon an adjustment of equities between Barbee and Bauer as partners there would be no moneys due Bauer from the partnership assets, and that the result of the accounting would show a judgment in Barbee's favor and that he owned the partnership assets including the $2,000 note involved in this suit. Appellants' contentions presented in their several assignments of error are: (1) That Crow, not having the agency for the lands, did not acquire any right to or interest in any profits or commissions growing out of a sale of the Smith lands to Ogden by reason of any contract or partnership

relation he sustained to Bauer in the sale of the Smith lands; (2) that, if he did at any time have such contract or partnership relation with Bauer, such contract or relation ended before the sale was consummated by reason of the changes in relation to each other growing out of the changes in the several contracts made, and because Crow did nothing to effect the sale under any of the agreements; (3) that because he (Barbee), on the 10th day of June, and before any sale was made, formed a partnership with Bauer for the sale of lands, including a sale of the Smith lands to Ogden, and assisted in making a sale of the lands, all of the profits or commission for the sale of the Smith lands to Ogden should go to Bauer and Barbee; (4) that after the sale was closed and the money, including the commissions, and the $2,000 note, were deposited in the bank, and after he (Barbee) and Bauer had divided the cash part of the commission ($5,625), and while the $2,000 note was still in the bank and undisposed of, in a suit by him (Barbee) against his partner, Bauer, in which Crow was not a party, for an accounting, a decree was entered in the Barbee-Bauer suit for $2,596, and that he (Barbee) was jointly interested in and owned the partnership assets of the firm of Bauer and Barbee, including the $2,000 note, and Hazzard was appointed receiver of the assets of said firm and directed to take possession of the assets and convert them to cash. The court refused to hear the evidence as to the issues made in the Barbee-Bauer suit or the decree entered, and appellants assign as error the exclusion of the evidence, and claim that, because of the decree in the Barbee-Bauer suit, the issues and decree were material evidence in this suit, and that the receiver should take possession of the note as an asset of Bauer and Barbee, and apply it as directed.

[2-4] The facts are practically undisputed. We think the evidence and the facts clearly show an agreement between Crow and Bauer from the very beginning of their dealings with each other that both would share equally in any profits or commissions earned by either or both in any sale of the Smith lands to Ogden. It was not a fact necessary to the agreement for a division of commissions between Crow and Bauer, or between any of the parties subsequently entering into the several contracts looking to a sale of the Smith lands to Ogden, that Crow should have been an agent for the Smith lands, or should have had any right or authority to sell from Smith or Moling, the sole agent of Smith. It is evident that Bauer knew at the time of making the agreement with Crow that Crow did not have the agency for the Smith lands. It is equally evident that, at the time of the agreement between Crow and Bauer, Bauer knew nothing of the Smith lands or that Moling was the agent for them. Crow was the first to suggest to Bauer the sale of the Smith lands to Ogden, and Bauer thought the Smith lands just what his client Ogden wanted. Crow then introduced Bauer to Moling, the sole agent for Smith, and they at once commenced a vigorous effort to make the sale to Ogden, which was accomplished within a very short time. It is true that several contracts between the parties trying to effect a sale were made, Moling becoming the owner of an option contract to buy from Smith and Bauer an assignee of the option contract, Moling at one time agreeing to pay Crow a part of his commissions, and Bauer agreeing to pay a part of his commissions to Mays; but neither the evidence nor the facts found by the jury shows that the agreement between Crow and Bauer to divide between the two whatever commissions they should make was ever expressly or impliedly changed or abandoned by either. The contracts of May 25th, between Moling and Bauer and to the terms of which Crow agreed, provided for the payments to Moling and Bauer of all commissions received in the event a sale was made on the terms stated, and in that event Moling was to pay Crow out of his part of the commission $3,000, and Bauer was to pay Mays out of his part of the commission $2,000. But the sale was not made on the terms stated in that contract, and that contract was abandoned, but the effort between the same parties to sell the same lands to same party continued. Had the sale been made under that contract, it might have been claimed with some plausibility that Crow had accepted to take his profits from Moling and could not require a pooling of his profits with those of Bauer and a division of the entire profits of Crow and Bauer. But that is not the question before us. The agreement did not stipulate what part Crow was to perform and what part Bauer was to perform in making the sale of the Smith lands to Ogden. On the same day, but after his arrangement with Bauer, Crow brought the two agents together, the one representing the seller and the other the buyer, and all three discussed and outlined a plan of action. What more could Crow then do? It seems that his part was then accomplished, in the absence of evidence that there was something assigned him that he should or could have done which he failed to perform. It is clear to us that Crow was entitled to receive a part of the commission from Bauer on the sale to Ogden.

[5] If we are right in our conclusion on that proposition, it would necessarily follow that his right to the $2,000 note would be superior to and take precedence over any claim that Barbee would have to the note by reason of any subsequent partnership or agreement with Bauer to which Crow was not a party, or to any decree of the court

in a suit with Bauer to which he was not a party.

The above seems to us to dispose of the other issues presented.

We believe the case should be affirmed, and we so hold.

## On Rehearing.

PER CURIAM. Rehearing denied.

HARPER, C. J. (dissenting). In order for plaintiff Crow to recover any portion of the commission or profit on the sale of the land, he must not only have had a contract with Bauer to work with him in consummating the sale, as found by the jury in reply to the special issue, but he must show, and the jury must find, that he (Crow) did something toward bringing about the sale. This is not of that class of contracts wherein a tender of services is sufficient to enable a party to a contract to participate in profits growing out of it, but this contract required some affirmative act in furtherance of the thing to be accomplished before participating in the profits.

It is true that there is evidence that Crow brought the parties together, and that alone is sufficient to enable him to recover, if the jury believed him, so the point to be determined in this case is: Was that question submitted to the jury, and, if so, was it determined for or against appellee Crow? I am of the opinion that the special issues submitted, in the form in which the questions were framed, did submit the question, and especially the question and answer No. 9 quoted in the original opinion, "That Barbee and Bauer, acting together and alone, made the sale of the Smith lands to Ogden," is a direct finding that Crow did nothing toward consummating the sale; therefore constitutes a verdict for the defendant. And the judgment of the lower court should have been entered accordingly. This question having been presented by the twenty-second and twenty-third assignments of error, they should have been sustained. The motion for rehearing now pending should be granted, and the cause reversed and remanded. Wherefore I, at this time, enter my dissent to the majority opinion.