**Douglas B. MOORE, Appellant,**

v.

**Walter A. SUSSDORF et al., Appellees.**

**No. 303.**

Court of Civil Appeals of Texas.

Tyler.

Nov. 16, 1967.

Rehearings Denied Dec. 7, 1967.

Ramey, Brelsford, Flock & Devereux, Tom B. Ramey, Jr., Michael A. Hatchell, Tyler, for appellant.

Spruiell, Lowry, Potter, Lasater & Guinn, F. Wilbert Lasater, Tyler, for appellees Sussdorf and McFarlane.

Johnston & Johnston, Luther C. Johnston, Palestine, for appellee J. W. McFarlane.

B. R. Reeves, Palestine, for appellees Frossard and Black.

MOORE, Justice.

This is an appeal from a summary judgment. Appellant, Douglas B. Moore, filed suit against appellees, Walter A. Sussdorf, et al., for breach of contract, alleging that he and Sussdorf were duly licensed real estate brokers; that on December 31, 1963, he, Moore, secured a non-exclusive listing from J. E. Morrison, the agent of O. P. Leonard, authorizing him to sell a large tract of land containing approximately 15,000 acres known as the Leonard Ranch, situated in Anderson County, Texas, for the sum of $110.00 per acre; that shortly thereafter, he advised Sussdorf of the listing and he and Sussdorf entered into an oral contract to work together in the sale of the land and to divide any commissions received thereon; that as a part of the agreement, Sussdorf agreed not to seek a listing from the owner; that contrary to the agreement, Sussdorf secured a listing from the owner; that subsequently, through the joint efforts of Sussdorf and the other appellees, J. W. McFarlane, J. H. Frossard and W. D. Black, Jr., the land was sold to the State of Texas; that as a result of the sale, Sussdorf and appellees McFarlane, Frossard and Black were paid a total commission in the

amount of $98,439.10 by the owners. Appellant further alleged that he was entitled to his share of the real estate commissions, but that appellees withheld same from him and as a result he suffered damages in the amount of $85,841.98.

Appellee Sussdorf denied generally the allegations of the petition, and specially pleaded that the contract was without consideration. He further alleged that the contract was void and unenforceable in that the listing with appellant Moore from the owners was not in writing in violation of the Real Estate Dealers License Act, Article 6573a, and the Statute of Frauds, Article 3995, Vernon's Ann.Tex.Stat.

As grounds for a cause of action against McFarlane, Frossard and Black, appellant alleged after he and Sussdorf contracted to work together in the sale of the Leonard Ranch, McFarlane, Frossard and Black entered in a joint venture with Sussdorf for the purpose of selling the land, as a result of which Sussdorf became their agent, servant or employee, and as a consequence, they became jointly and severally liable in damages for loss of commission suffered by appellant by reason of Sussdorf's breach of contract with him.

Appellees McFarlane, Frossard and Black denied generally the allegations, and specially denied that either of them had any knowledge of the alleged contract between Moore and Sussdorf, or induced Sussdorf to breach the contract. They also set up a plea of failure of consideration upon the alleged contract between Moore and Sussdorf and asserted that the alleged contract was void upon the same grounds alleged in Sussdorf's answer.

Neither O. P. Leonard nor any of the other owners of the Leonard Ranch were made parties to the suit.

After a hearing, the trial court entered a summary judgment in favor of the appellees, rendering a take-nothing judgment against appellant Moore, from which he perfected this appeal. For convenience, the parties will hereinafter be referred to by their last names.

The record contains the pleadings, depositions and affidavits of all parties as well as the depositions and affidavits of O. P. Leonard and his agent, J. E. Morrison.

In summary judgment proceedings, the burden of proof is on the movant and all doubt as to the existence of a genuine issue of material fact must be resolved against him, and the pleadings, depositions and affidavits must be reviewed in a light most favorable to the party opposing the summary judgment. Gulbenkian v. Penn, 1952, 151 Tex. 412, 252 S.W.2d 929.

When viewed in a light most favorable to appellant, the evidence shows that Moore and Sussdorf maintained separate offices in Palestine, Texas, and as real estate agents, they had frequently cooperated in real estate transactions in the past and had shared in the commissions earned thereon. In the present case, the evidence shows that in the fall of 1963, Moore contacted J. E. Morrison, a real estate agent in Fort Worth who was an agent of O. P. Leonard. Morrison advised Moore that O. P. Leonard and the other owners were contemplating the sale of the Leonard Ranch. On December 31, 1963, Morrison wrote Moore and advised him to go ahead with the sale as planned, at $110.00 per acre without mineral rights. Morrison orally advised Moore that the owners had agreed to pay a five percent broker's commission and thereupon they agreed to divide the commission equally. It is undisputed that the listing was upon a non-exclusive basis. Shortly after Moore secured the listing, he advised Sussdorf thereof. According to Moore's testimony, he did not tell Sussdorf that he and Morrison had agreed to split the five percent commission, because it was none of his business. Although he testified that he told Sussdorf that the ranch could be sold at $110.00 per acre, he testified that he told him that in order for them to make any money, it would have to be sold at a figure in excess of $110.00 per acre. He testified

that during their discussion, he and Sussdorf agreed to work together in selling the land for $125.00 per acre and agreed to equally divide any commission or profits received thereon. Sussdorf admits the discussion was held, and testified that he told Moore that he did not believe that the land could be sold for $125.00 per acre, and even though they were able to find a buyer at that price, he doubted Mr. Leonard would allow them to make a $15.00 per acre commission. Nevertheless, he did not say that he refused to work with Moore on the proposal. Shortly after this conversation, the evidence shows that Sussdorf contacted a real estate broker in Crockett, Texas, by the name of Beall, who advised him that he and other brokers in San Antonio, Texas, had a client interested in a large tract of land. Sussdorf advised him of the Leonard Ranch and subsequently went to Moore's office and advised Moore. He then secured from Moore a map of the Leonard Ranch and delivered it to Beall in Crockett. At a later date, Sussdorf again visited Moore's office and Moore inquired of the progress being made with Beall. Upon being advised that no progress had been made, Moore suggested that Sussdorf call Beall from his office and check on the progress. After the telephone conversation with Beall, Sussdorf reported that no progress had been made because Beall's client had been out of the county for some time, and it was not known when he would return. Moore testified that when he first learned that Sussdorf was negotiating with Beall, he called J. E. Morrison in Fort Worth and requested authority to sell at $125.00 per acre and that Morrison granted such authority agreeing to the additional $15.00 per acre over and above the $110.00 per acre as commission. In his affidavit attached to his reply to the motion for summary judgment, Moore stated that he notified both Beall and Sussdorf that he had authority to sell at $125.00 per acre and to take the remainder as commission. Both Morrison and Leonard denied that they had ever granted Moore such authority. Although there is no evidence showing further negotiations with Beall,

there is nothing in the evidence suggesting that the negotiations with him had been terminated.

In the meantime, appellee Frossard, who was a licensed real estate broker in Madisonville, Texas, and appellees J. W. McFarlane and W. D. Black, Jr., who also resided in Madisonville but were not licensed brokers, had learned that the State of Texas was interested in acquiring a large tract of land in the vicinity of the Leonard Ranch for the Prison System, and were attempting to assist the State in acquiring sufficient acreage in that area to satisfy its needs. On April 1, 1964, Frossard contacted Sussdorf and inquired whether Sussdorf could get an exclusive listing on the Leonard Ranch. Sussdorf agreed to try. Without mentioning the conversation to Moore, he secured an exclusive listing for 60 days whereby Leonard agreed to sell for $125.00 per acre and pay a five percent brokerage commission. Frossard and Sussdorf then agreed to divide the commission whereby Sussdorf was to receive $1.00 per acre as his share. As it subsequently developed, the State needed several thousand acres in addition to the Leonard Ranch and in addition required that a substantial portion of the land contain all mineral rights. Much of the Leonard property was without mineral rights. The State agreed that if sufficient land could be acquired, the State would pay $135.75 per acre for the land with the mineral rights and $125.00 per acre without mineral rights. In view of the State's additional requirements, O. P. Leonard and appellees set out to acquire enough additional land and mineral rights to satisfy the State's need. In the meantime, Sussdorf's exclusive listing expired and Leonard refused to renew it. However, the evidence shows that Leonard, with the assistance of appellees, continued acquiring additional lands and minerals. Finally on June 18, 1965, Leonard succeeded in acquiring sufficient land and succeeded in consummating a sale to the State for a total consideration of $2,400,000.00, which was paid to the owners.

The evidence shows that the consideration for the purchase of additional lands and minerals was furnished by O. P. Leonard. In the process of buying and selling the land and minerals, other than the Leonard Ranch, there resulted a profit of $98,439.10. Subsequently, Leonard and the owners issued a check to McFarlane, Frossard and Black in the amount of $98,439.10 for their services in assisting in securing additional land and minerals. These funds were divided equally between them. Leonard also paid Sussdorf a commission of $1.00 per acre for his service in the sale of the Leonard Ranch, totalling the sum of $14,992.35. According to the evidence, Sussdorf also received the sum of $3,150.28 from Frossard and a like amount from Black. They both testified that they voluntarily paid Sussdorf such sums for his assistance in securing additional land.

As we view the appellant's pleadings, he first asserts a cause of action for damages against Sussdorf for breach of their agreement to work together in the sale of the property, and then asserts that the other appellees were jointly liable with Sussdorf for damages as a result of Sussdorf's breach of his contract with Moore.

Appellant first contends that the rendition of a summary judgment against him was improper because the evidence was sufficient to raise a material issue of fact upon the question of whether he and Sussdorf agreed to work together and share the commission.

It is generally held that an agreement between brokers to work together and share a commission on consummation of a deal constitutes a joint adventure and is enforceable. 9 Tex.Jur.2d, Sec. 82, p. 773; Miller v. Watson (Tex.Civ.App.), 257 S.W. 2d 839; Finney v. Terrell (Tex.Civ.App.), 276 S.W. 340; Keiswetter v. Rubenstein, 235 Mich. 36, 209 N.W. 154, 48 A.L.R. 1049.

It has also generally been held that the relationship thus created is in the nature of a particular partnership and is governed by most of the same principles which apply to partnerships, including a fiduciary relationship, requiring each member to exercise the highest degree of good faith toward the other. Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256; Gilmer v. Graham (Tex.Com.App.), 52 S.W.2d 263; Mann v. Jones (Tex.Civ.App.), 233 S.W. 989. If Moore and Sussdorf, in fact agreed to unite their efforts and share in the benefits, Sussdorf would not, of course, be permitted to terminate the partnership for the fraudulent purpose of obtaining an exclusive listing and selling the property for his own benefit.

After a careful review of the record, we are persuaded to believe that the evidence is sufficient to raise an issue upon the question of whether or not Moore and Sussdorf agreed to a joint adventure. As we see it, appellant's testimony, together with other facts and circumstances, was sufficient to raise a material fact issue upon the question of whether or not the parties agreed to work together in selling the property and upon the consummation of a sale to share the commissions. Jordan v. Afton Engineering Co. (Tex.Civ.App.), 397 S.W.2d 512. Accordingly, we take the position that the court erred in rendering a summary judgment in favor of Sussdorf.

In assuming his negative burden of showing, as a matter of law, that Moore has no cause of action against him, Sussdorf contends that the summary judgment in his favor must be sustained because the agreement was not supported by consideration. As we view it, the judgment cannot be sustained on this basis. According to Moore's testimony, there was a mutual agreement to work together for their mutual benefit for a profit. It has been held that mutual promises by the parties to a joint adventure are a sufficient consideration to support their contract. Thompson v. Corbin (Tex. Civ.App.), 137 S.W.2d 157, citing cases; Nichols v. Anderson (Tex.Civ.App.), 164 S.W.2d 268. The question of consideration thus turns upon the original question of

whether the parties in fact mutually agreed to a joint venture.

It is next contended by Sussdorf that even though the agreement was supported by consideration, the summary judgment was nevertheless proper because Moore's listing from the owner was not in writing and therefore void under the provisions of Articles 6573a and 3995, supra. We think the contention is without merit. While the provisions of the Real Estate Dealers License Act, Art. 6573a, prohibits a suit against the owner in the absence of a written contract, this did not preclude Moore's right to enforce against Sussdorf his alleged agreement to share in the commission. Hohenberger v. Schnitzer (Tex. Civ.App.), 235 S.W.2d 466. Nor were the provisions of Article 3995 available to Sussdorf since he was not a party to the alleged contract between Moore and Leonard. The statute merely establishes a rule of evidence which is personal to the landowner and which he may or may not choose to rely upon.. Yarber v. Iglehart (Tex.Civ.App.), 264 S.W.2d 474. Moreover, there is authority to the effect that if joint adventurers agree to sell a specific piece of property and share the commission, a recovery of commissions by one of the joint adventurers will be permitted even though at the time no prior agreement, authority to sell, or listing from the owners existed. Bauer v. Crow (Tex.Civ.App.), 171 S.W. 296; Hohenberger v. Schnitzer, supra; Trice & Ludolph v. Cone (Tex.Civ.App.), 163 S.W. 587.

Finally, Sussdorf contends that the summary judgment in his favor must be sustained because his subsequent contract with Leonard involved land owned by Leonard in addition to the Leonard Ranch. We think this contention is likewise without merit. It is generally held that a broker's right to a commission on property listed with him is not affected by the fact that the ultimate sale includes more or less acreage or is sold for a greater or lesser price than originally contemplated. Webb v. Harding (Tex.Civ.App.), 159 S.W. 1029, Id. Tex.Com.App., 211 S.W. 927; Frost v. Texas Gulf Sulphur Co. (Tex.Civ.App.), 17 S.W.2d 121, writ ref.

We turn now to appellant's cause of action against appellees, McFarlane, Frossard and Black. The theory upon which appellant seeks to predicate liability upon these parties is by no means clear. Appellant first says in his brief that liability against these defendants, other than Sussdorf, is predicated upon the theory that they were joint venturers with Sussdorf, or that they were his principals and liable for his action. In other words, he would predicate liability upon the proposition that when Sussdorf joined them in the venture, appellees McFarlane, Frossard and Black immediately became jointly and severally liable upon any and all previous contracts to which Sussdorf may have been a party. Consequently, he concludes that they became jointly and severally liable with Sussdorf for damages as a result of his breach of contract with Moore. We think this contention is untenable. The authorities cited by appellant do not support such a proposition and we have been unable to find any authority in support thereof. The evidence fails to show privity of contract between Sussdorf and the other appellees. Nor is there any evidence showing they assumed or ratified his contract with Moore. Under these circumstances, these appellees cannot be liable to Moore upon a cause of action ex-contractu. 44 Tex.Jur.2d, Sec. 65, p. 393; First State Bank of Riesel v. Dyer, 151 Tex. 650, 254 S.W.2d 92.

The case of Bauer v. Crow, supra, cited by appellant, does not support his position. In that case, one of the partners to the older partnership took into the new partnership a prospective purchaser belonging to the older partnership, and the new partnership merely consummated the sale, and the court held the new partnership liable to the older partnership for a share of the commission. Such was not the case here. Sussdorf did not consummate a sale with a prospective

purchaser belonging to the alleged joint adventure of Sussdorf and Moore.

Perhaps we should let the matter rest here, but appellant goes further and states that the suit against these appellees is one for compensatory damages, and is not a suit to recover commissions. Thus it appears that appellant is also asserting a cause of action against these appellees, in tort, based upon wrongful interference with his contract with Sussdorf. Even so, we have concluded that the evidence fails to raise a material issue of fact in this respect.

 We recognize the broad principle of the law of torts which makes actionable wrongful interference by one with the contractual right or relationship of others. Yarber v. Iglehart, supra; 146 A.L.R. 1410, 1418. However, in that type of situation, it must also be shown that defendant's wrongful act was the proximate cause of the breach and the resulting damages. 55 Tex.Jur.2d 629, Sec. 5; Ringler v. Ruby, 117 Or. 455, 244 P. 509, 46 A.L.R. 245; 84 A.L.R. 51. As we view the facts in the present case, no legal injury was caused by these appellees. There is no evidence showing that either McFarlane, Frossard or Black had any knowledge of the alleged agreement between Moore and Sussdorf until long after Sussdorf had obtained the exclusive listing from Leonard. Until appellees negotiated to sell to the State, neither Moore nor Sussdorf had earned anything as a result of the alleged joint adventure. Nor had they found a purchaser ready, willing and able to purchase the property. The conduct of appellees McFarlane, Frossard and Black did not damage Moore, but on the contrary, their conduct actually resulted in a benefit to him, because when they consummated the sale to the State of Texas, Moore's alleged right to share in the commission earned by Sussdorf accrued. It was Moore's contention from the beginning, as we understand it, that he and Sussdorf agreed to share equally any commission earned by either of them as a result of the sale of the property. To say

that these appellees destroyed or interfered with that which they in reality created is, of course, illogical. As we see it, their conduct cannot be said to have been a cause in fact of any loss or damage to Moore. Madden v. Shane (Tex.Civ.App.), 185 S.W. 908. For the reason stated, we have concluded that no material issue of fact was raised with reference to appellant's alleged cause of action against appellees McFarlane, Frossard and Black.

In view of the fact that appellant's cause of action against appellees McFarlane, Frossard and Black is severable from that alleged against Sussdorf, the summary judgment in their favor will be affirmed, and reversed and remanded as to Sussdorf.

Affirmed in part, and reversed and remanded in part.