**Phillip KOST, Appellant,**

**v.**

**Frank H. LANCASTER, Appellee.**

**No. 14996.**

Court of Civil Appeals of Texas.

Houston.

March 16, 1967.

Rehearing Denied May 4, 1967.

Richard O. Werlein, Houston, for appellant.

Thomas G. Bousquet, Houston, for appellee.

COLEMAN, Justice.

This is a suit by a licensed agent for a real estate broker's commission. After a trial to a jury a judgment was entered for the defendant.

The most interesting question for decision in this case is whether the unconditional promise to pay a commission to the agent contained in the contract for sale can be enforced by the agent where the sale is not completed.

Appellant was employed by appellee to negotiate the sale of certain real estate. No written contract was executed listing the property with appellant. However, as a result of his efforts appellee entered into a contract by which he agreed to sell the property to Continental International Corporation for $45,000.00 payable as follows:

"$500.00 cash, and the further consideration of the transfer and delivery to seller of $10,000.00 worth of stock of the Continental International Corporation based on the price of $5.00 a share; the further consideration of the assumption and agreement to pay by purchaser of the unpaid balance now due and owing on note held by Gibraltar Savings & Loan Association in the amount of $16,996.11 as of August 16, 1960; and the further consideration of purchaser procuring from Gibraltar Savings & Loan Association an additional loan in the approximate amount of $17,503.89; or an amount so that the unpaid balance on the present loan and the amount of the new loan will aggregate the sum of $34,500.00; * * *"

The contract provided that title to the property would be guaranteed to purchaser at seller's expense by Stewart Title Guaranty Company. It provided that:

"If STEWART TITLE GUARANTY COMPANY is ready and willing to guarantee said title as above set forth to

purchaser and purchaser fails, refuses, or is unable for whatsoever reason to consummate this contract in accordance with the terms hereof, and within 30 days from date of this contract, then the earnest money receipted for shall be forfeited to Seller and Agent equally (however, agent shall not receive more than the commission hereinafter set out) as agreed liquidated damage or seller may enforce specific performance of this contract."

The contract provided that if Stewart Title Guaranty Company refuses or is unable to guarantee the title to the property for whatsoever reason upon the cancellation and return of the contract the earnest money should be returned to the purchaser, or he might enforce specific performance of the contract.

There is a provision that "Seller agrees to pay L. P. Kost, Agent, 5% of the total purchase price as a commission." It was also provided that the contract was subject to the approval of the Board of Directors of the Continental International Corporation. The contract was dated August 23, 1960.

On August 24, 1960, the corporation made an application for a $35,000.00 loan from Gibraltar Savings & Loan Association. On September 8, 1960, the application was returned along with a letter stating that the loan would not be granted. Clyde Austin, President of Continental International Corporation, testified that on the 9th or 10th of September, he called appellee and told him that the corporation would pay cash instead of securing the loan and demanded that appellee go through with the deal. He testified that appellee told him that he did not want to go through with the deal. Austin testified that he offered to assume the mortgage, issue the stock and pay $17,000.00 cash, and finally when appellee would not agree to any other terms, he offered to pay $45,000.00 in cash. He testified that the company was ready, able, and willing to complete the purchase on an all cash basis.

On September 20, 1960, Austin wrote appellee a letter reading:

September 20, 1960

Dr. Frank H. Lancaster
1729 Sunset Blvd.
Houston, Texas

Dear Dr. Lancaster:–

Reference is made to our agreement with you for the purchase of the property known as 5727 Kirby Drive, Houston, Texas. Please be advised that we desire to complete this purchase on or before September 23, 1960, as called for in the agreement.

We have made our financial arrangements and are ready, willing and able to close this purchase and ask that you let us have your abstract of title or other evidence of ownership in order that our attorneys may give us an opinion on same.

Yours very truly,
CONTINENTAL INTERNATIONAL CORP.

By: _____
Clyde Austin, President

CA/en

Appellee replied to this letter by a letter dated September 22, 1960, reading:

September 22, 1960

Mr. Clyde Austin
Continental International Corporation
4608 South Main Street
Houston 2, Texas.

Dear Sir:

Your letter dated the 20th instant was received in my office this afternoon.

When Mr. Kost informed me that you were unable to get the loan through the Gibraltar Savings and Loan Association as specified in the earnest money contract, I called the Gibraltar Association and was informed that the loan had not been approved as Mr. Kost had said.

It was uncertain then as to when or how you would proceed to get the money and I consulted my attorney who informed me that I was no longer obligated under the original contract. I then wrote Mr. Kost and enclosed is copy of this letter which I supposed he had discussed with you. I presumed your check had been returned as I requested.

I later talked with Mr. Kost and advised him that negotiations with your firm could be continued only on the basis of a new contract.

Since no new contract has been presented, I considered the matter closed and have again listed the property with other agents for sale.

Very truly yours,

/s/ Frank H. Lancaster

Frank H. Lancaster, M. D.

FHL:ed

Mr. Kost was in the office and
advises he has returned your
check.
    /s/ F. H. Lancaster

————◆————

Accompanying this letter was the letter to appellant dated September 8, 1960, reading:

September 8, 1960

Mr. L. P. Kost
1502 Branard
Houston, Texas

I am informed by the Gibraltar people that they are unable to approve the loan to the Continental International Corporation as requested and would return the file and check for earnest money to you.

My attorney advises that this action makes our earnest money contract null and void and I request that you return the check to the Continental International Corporation and consider the transaction closed as of this date with no further obligation on my part to consummate this sale.

Yours truly,

Frank H. Lancaster, M. D.

Austin testified that after receiving the appellee's letter of September 22, 1960, he talked to appellant asking him to see if he couldn't complete the deal and that he called appellee, but was unable to reach him. He testified that the sale was not completed and that, as he recalled it, he got his earnest money check by letter from Gibraltar.

Mr. Kost testified that he did not return the earnest money check to Mr. Austin and that he didn't know who returned it. He stated that after Gibraltar turned down the loan he talked to appellee, who told him that he didn't believe the deal was going through and that he was not going to wait until the thirty day period was over. Mr. Kost then gave this information to Mr. Austin. He had no other discussion with appellee about the matter.

Appellee testified that he had talked to the Continental people about selling them the property but they had reached no agreement, so he told Mr. Kost to contact them and see if he could work out a deal. Mr. Kost came to him with the proposition of taking some stock and "he pictured them with very glowing terms of how busy and all they were and what a fine company it was," and he agreed to take the stock as part payment since he was getting a fairly good cash payment which was what interested him. He testified that he knew nothing of the company and had never met any member of the organization. He testified that the deal hinged on whether they could borrow the money from Gibraltar, but that this was their suggestion. While the agreement was that Continental would assume the existing loan, it was his understanding that he would be relieved of liability on the loan.

Appellee testified that Mr. Kost told him that Gibraltar had turned down the loan and he told Kost that the deal was off if they did not make the loan. He testified that he did not think he ever saw the earnest money check and that he thought Mr. Kost handled that part of it.

He testified that he sold the property to Meyer & Balson for some notes. He had been talking to them before he signed the contract with Continental, but the deal entailed no cash and he was interested primarily in cash. The deed to Meyer & Balson was dated September 23, 1960.

Appellee testified that he talked with Mr. Austin on the telephone several times before the contract was signed, but not after that time. He could not recall Mr. Austin telling him that Continental would pay cash for the property. He testified that Continental never gave him any indication that it was going to put up any money at the title company. He testified that when he received Mr. Austin's letter, he checked with "his" bank, and while he could not get any specific information, he was told that his account did not run over four figures. He testified that he was sure that if Continental had paid $27,000.00 cash into the title company, he would have proceeded with the sale. Another time he stated that if Continental had paid $27,000.00 cash and assumed the loan balance, "very likely" he would have proceeded with the sale. He said he was interested in cash— that he would have gone through with the deal if they could have paid him all cash and no stock. In the sale to Meyer & Balson, Inc. he received no cash, but, instead, twelve first and second lien notes on other property with an unpaid balance of $30,000.00. In his opinion the market value of the notes was a lesser amount. He admitted that on September 22, 1960, the final day for performance of the contract, he received Mr. Austin's letter and replied to it. He testified that prior to that time he had told Meyer & Balson, Inc. that if the Continental deal did not go through, he would deal with them, but he denied that he prevented the deal from going through, or refused to accept the offer of cash. He did not ask him for the money. He testified that he would have been happy to get all cash.

The binding effect of the contract is not expressly conditioned on the ability of the

purchaser to secure a loan in the agreed amount from Gibraltar. However, the petition on which appellant went to trial contained this statement: "As shown in said contract, one of the conditions of the agreement was that the purchaser procure a loan in the approximate amount of * * *" In his answer appellee pled: "Defendant agrees with plaintiff as pled by him that the obtaining of the loans described in such contract was a condition of the contract; a condition on which was based the obligation of the purchaser to buy, and the seller to sell, and consequently Plaintiff's earning a commission."

While the contract must be considered conditional, the condition was inserted for the benefit of the purchaser. The purchaser testified that he was ready to pay cash, and, in effect, waived the condition by the letter of September 20, 1960. Since this letter was received by appellee on September 22, 1960, the day preceding his sale to a third party, it is undisputed that he knew that the purchaser was insisting that the contract was a binding obligation at the time the sale was made.

The letter written by appellee to appellant on September 8, 1960, states that he has been advised by his attorney that the failure of the purchaser to secure the Gibraltar loan rendered the earnest money contract null and void and requested appellant to return the earnest money check to the purchaser and consider the transaction closed with no further obligation on appellee's part to consummate the sale. Appellee's action in writing the purchaser on September 22, 1960, enclosing a copy of this letter and advising Mr. Austin that he considered the matter closed and had listed the property with other agents for sale reaffirmed the position taken in the letter of September 8, 1960.

This letter, as well as the action of appellee in conveying the property on September 23, 1960, effectively prevented the performance of the contract on the part of the purchaser by paying cash. The time for performance had not expired. The thirty day time limit was conditioned on Stewart Title Company being ready and willing to guarantee the title. There is no evidence that the title company was ready or willing to guarantee the title. The purchaser's letter of September 20 requested evidence of this fact, and it was not furnished.

In Stevens v. Karr, 119 Tex. 479, 33 S. W.2d 725 (1930), the Supreme Court of Texas describes as "well established" these rules:

"'A commission ordinarily becomes payable on completion of the transaction which the broker was employed to negotiate, unless there is a stipulation in the contract of employment to the contrary. If by the contract of employment the broker is merely to find a customer who is able, ready, and willing to enter into a transaction with the principal on the terms prescribed by him, the broker is entitled to compensation on performing that service, whether or not the principal completes the transaction. Thus a broker employed to find a purchaser or a vendor or to exchange lands ordinarily becomes entitled to a commission on the execution of a contract of purchase or sale or exchange, although without any fault on the part of the broker the contract is never carried out, unless there is a stipulation, express or implied, making his right to compensation depend on the performance of the contract or the happening of some other event.' 9 C.J. p. 591, § 86b.

"'A broker employed to find a purchaser or seller is not entitled to a commission where no sale is made, unless the purchaser or seller is able, ready, and willing to take or to sell the property on the terms specified by the principal, although this general rule is subject to exceptions depending on the facts of the particular case, as where the broker effects a sale with a person designated by the principal, or where the broker acts in good faith, and the principal accepts

his customer and enters into a contract with him, in which case the question of the customer's ability, readiness, and willingness is no longer open to question. On producing a person who is ready, able, and willing to take the property on the terms prescribed, the broker becomes entitled to a commission whether or not a sale is consummated, unless the failure to consummate the sale is due to the fault of the broker, or unless he waives his right to his commission.' 9 C.J. p. 595, § 87(2)."

In the early case of Moss & Raley v. Wren, 102 Tex. 567, 113 S.W. 739 (1908), on motion for rehearing, 102 Tex. 567, 120 S.W. 847, the court said: "If the vendor of the land can enforce a specific performance of the contract to pay for it, then the broker has effected a sale, valid in law, and is entitled to his compensation. * * *"

In Frances v. Foster, 113 Tex. 521, 260 S.W. 1023 (Tex.Com.App., 1924, opinion adopted), the court quoted the rule applied by the Commission of Appeals of Texas in Keener v. Cleveland, 250 S.W. 151, as follows: " 'And where the seller accepts the purchaser tendered, it is not necessary to show that he was ready, willing, and able to buy.' " The opinion continued:

"The position is taken in the dissenting opinion on the case now before us that the rule above stated applies only to cases of the sale of real estate where specific performance may be enforced, but upon an investigation of the authorities we cannot agree with this contention, but are of the opinion that the holding quoted is based upon the principle that, when the seller enters into a binding contract with a purchaser acceptable to him, the seller assumes the risk as to whether or not the purchaser will be in position to perform his part of the contract, and that when such contract is so entered into by the seller the agent has performed all the duties that he can perform under his employment."

This rule has been followed consistently by the courts of civil appeals in Texas. Miller v. Carlson, 390 S.W.2d 64 (Tex.Civ. App.–Texarkana 1965, writ ref., n. r. e.); McNeil v. McLain, 272 S.W.2d 573 (Tex. Civ.App.–Ft. Worth 1954, no writ hist.); Peters v. Coleman, 263 S.W.2d 639 (Tex. Civ.App.–Ft. Worth 1953, writ ref., n. r. e.); Caneer v. Martin, 238 S.W.2d 828 (Tex.Civ. App.–Waco 1951, writ dism.).

■ In this case appellee suggested to appellant that he negotiate a sale of the property with the buyer. Appellant entered upon such negotiations with the buyer and procured an acceptable contract, which was executed by all parties. The provision in the contract by which appellee agreed to pay a commission to appellant was not conditioned on the completion of the sale and there is no contention that such a condition was omitted from the contract by reason of fraud, accident or mistake.

The trial court erred in failing to grant appellant's motion for instructed verdict insofar as his claim for real estate commission is concerned.

■ Appellant was entitled to recover reasonable attorney's fee as authorized by Article 2226, Vernon's Ann.Tex.Civ.St.; Texas Reserve Life Insurance Co. v. Security Title Co., 352 S.W.2d 347 (Tex. Civ.App.–San Antonio 1961). An issue was submitted to the jury to determine the amount of such an attorney's fee. The jury's answer "none" is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. This portion of the cause of action is ordered severed.

The judgment of the Trial Court is reversed and judgment is here rendered against Frank H. Lancaster and in favor of Phillip Kost in the sum of Two Thousand Two Hundred Fifty ($2,250.00) Dollars with interest thereon at the rate of 6% per annum from September 22, 1960. The cause of action in respect to the attorney's fee

is hereby remanded to the District Court of Harris County, Texas, for trial.

Reversed and rendered in part, and in part reversed and remanded.

WERLEIN, J., disqualified and not sitting.