JOHN DULL & COMPANY, Appellant,

v.

LIFE OF NEBRASKA INSURANCE
COMPANY, Appellee.

No. 17903.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Dec. 17, 1981.

Stephen J. Cavanaugh, Bellaire, for appellant.

O.W. Bussey, Jr.; Greenwood, Koby, Symonds & Bussey, Houston, for appellee.

Before DOYLE, EVANS and WARREN, JJ.

*On Motion for Rehearing*

DOYLE, Justice.

The judgment heretofore filed in this cause on August 20, 1981 is withdrawn and the following judgment is rendered in its stead.

This is an appeal from a take nothing judgment wherein the court denied the real estate broker the right to recover a commission.

John Dull and Company sued Life of Nebraska Insurance Company claiming that it was entitled to a commission under an earnest money contract between Kuan Furi Lin as purchaser and the appellee. Appellant tried its case on the theory that it had produced a ready, willing and able buyer and that it had earned its commission when the contract was signed, regardless of whether a closing ever occurred. The trial was to the court which rendered judgment for the appellee. The appellant asserts 19 points of error.

Appellant's contentions may be summarized as follows: (1) the trial court erred in finding that under the agreement the defendant had as its sole remedy the retention of the earnest money as liquidated damages in the event of the buyer's default and that the defendant has no power to enforce specific performance; (2) the trial court erred in concluding that plaintiff was not entitled to a commission under an option agreement; that no closing took place under such agreement; that a closing under the option agreement was a condition precedent to plaintiff's commission recovery; (3) the tri-

al court erred in failing to make express findings that the seller terminated the contract; that the buyer was ready, willing and able to close; that the buyer accepted the option and that plaintiff did not waive its commission and was not at fault in any manner in preventing the closing.

Paragraph 8 of the subject earnest money contract reads:

Should the terms of this Agreement be carried out within the terms hereof, the Earnest Money shall be applied to the purchase price, but should Purchaser fail to carry out this Agreement within the terms hereof, for any reason except one or more title defects (not waived, as herein provided) as would show title in Seller not to be good and indefeasible as herein provided, or the failure of any condition to Purchaser's obligations hereunder, Seller shall retain said sum as liquidated damages and not as penalty, in full satisfaction of claims against Purchaser hereunder or pursuant hereto or in connection herewith.

Appellee contends that the foregoing language from the contract renders the instrument an option contract. We agree with this contention. The purchaser, Mr. Lin, had the right to decline to close the deal by forfeiting his earnest money as liquidated damages and would then be free from further liability. The law is well settled in Texas that agreements embodying such clauses are option contracts. *Brady v. Mitchell,* 572 S.W.2d 36, 40 (Tex.Civ.App.-Houston [1st Dist.] 1978, writ ref'd n.r.e.).

Appellant argues that his right to a commission was not contingent upon a closing, but only upon the production of a ready, willing and able buyer who signed the contract and agreed to buy at the price and terms set out therein. He relies on *West Realty and Investment Co. v. Hite,* 283 S.W. 481 (Tex.Comm'n App.1926 and *Kost v. Lancaster,* 414 S.W.2d 514 (Tex.Civ.App.-Houston [1st Dist.] 1967, writ ref'd n.r.e.). In both of these cases, it was held that the broker was entitled to a commission because the seller had the right to enforce specific performance. These cases are distinguished

from the case before us in that they involve contracts enforceable by the seller, while ours involved an option contract.

Appellant also makes the contention that all conditions precedent to an enforceable contract had been met, including proof of a buyer ready, willing and able to purchase at the price and on the terms of the contract and a default by the seller. There was conflicting testimony on whether Mr. Lin, the prospective purchaser, agreed to a rescission of the contract.

(Answers by Mr. Dull) ·

Q. Okay, sir. And, as a matter of fact, on or about the 22nd day of August you had a conversation with Mr. Koby, did you not?

A. That is correct.

Q. Concerning this, the property and the contract that is the subject of this lawsuit?

A. That is correct.

Q. And at that time you don't dispute that in that conversation Mr. Koby told you that Mr. Lin was trying to change the deal, do you?

A. No, sir, I don't.

Q. Okay, sir. You further do not dispute, do you, that in that conversation Mr. Koby told you that the Ramada Inn franchise was not available or had been terminated?

A. That is correct.

Q. And Mr. Koby further told you that with regard to the change, which we characterize as the new offer, that if it changed that he would have to think about it?

A. He said he would have to think about it.

\* \* \* \* \* \*

(Answers by Mr. O'Day)

Q. When you went to see Mr. Koby, Mr. Lin was going to suggest that the $20,000 be knocked off the contract because he didn't feel if he was not going to get the Ramada franchise he should be liable for something that was in arrears, is that correct?

A. True.

\* \* \* \* \* \*

(Answers by Mr. Koby)

A. The purpose for which this Mailgram was sent was to reconfirm to Mr. Lin that the Ramada Inn franchise on the property located near the airport had been terminated.

Q. Why was it necessary to reconfirm it, sir?

A. I think I have another purpose in here, as well, was to once again tell Mr. Lin that I was not interested in continuing the negotiations along the lines of his offer to me over the telephone on August the 22nd.

Q. You didn't have to send him written instructions that you were terminating, did you?

A. And finally, if you will permit me—

Q. I am sorry.

A. I wanted to, also, notify the title company that if they had any earnest money on deposit in connection with the August 22nd agreement that Life Of Nebraska disclaimed any interest in it.

\* \* \* \* \* \*

(Answers by Mr. Koby)

A. Because I had informed him that the Ramada Inn had terminated the franchise that we all thought then existed on the property.

Q. Okay, Was that your purpose in sending him your telegram on the 29th of August?

A. The purpose in sending the telegram was to reconfirm that conversation.

\* \* \* \* \* \*

(Answers by Mr. Koby)

A. He said it wasn't worth as much to him and he didn't want to pay the purchase price.

Q. Did he indicate to you anything about the franchise fee for the Ramada Inn?

A. No, he did not. He indicated to me that he would buy it on a set of different terms and conditions.

Some of this testimony was contradicted. It was the duty of the trial court to resolve any conflict in testimony which it did by filing findings of fact and conclusions of law supporting its judgment. Further, the seller's representative testified that the buyer advised him on the telephone, prior to the date set for closing, that he was not willing to purchase the property under the terms of the earnest money contract. The seller also testified that he accepted the buyer's statement as a termination of the contract. This testimony constituted some evidence from which the trial court was entitled to find that the parties had mutually agreed to rescind the contract. Thus, there is evidence to support the trial court's conclusion that the broker was not entitled to recover a commission on the sale.

Appellant complains that the trial court erred in not making certain expressed findings. While some of the requested findings found support in the evidence, none of them could have altered the conclusions of law on which the trial court predicated its judgment.

The motion for rehearing heretofore filed in this case is denied.

The judgment of the trial court is affirmed.