Lipscomb, J.
This suit was commenced by the appellee against the appellant to set aside a bond given by him, to mate titles to two hundred and fifty acres of land. The bond was given under the following circumstances, as collected from the plaintiff’s petition in the court below. The plaintiff alleges that he had employed one Welsh-myr to attend to procuring a patent for him for his headright; that he had promised and agreed with said Welshmyr, in consideration of such service to be performed, to give him five hundred acres of land, being a part of the said headright league, so soon as the patent should be obtained for him by the said Welshmyr; that some time afterwards, the said Welshmyr sold to Charles Kesler two hundred and fifty acres of said land, for which he gave his bond to make titles. This bond seems to have been an absolute one for the conveyance of the two hundred and fifty acres of land, without any reference to any thing to be done by the vendor, Welshmyr, for the petitioner. The petitioner, however, charges that Kesler knew the conditions on which he had undertaken to convey to Welshmyr. “The petitioner then avers that he, believing the said Welshmyr would do and perform his part of the contract aforesaid, and procure your petitioner a patent to the aforesaid league of land, did execute and deliver to the said Kesler a bond or obligation in which he promised to make unto the said Kesler a title to the said two hundred and fifty acres of land, as soon as he, your petitioner, should get a patent for his said league of land.” He then alleges that there was a mistake in the bond; that he intended only to have bound himself to make the title when the said Welshmyr should procure for him a patent. This is the bond sought to be set aside by the petitioner. It appears, • further, that shortly after Welshmyr died, and did not procure a patent for the land, and that the petitioner paid another person for procuring the patent. The defendant denied all the allegations in the petition except giving the bond, but admitted that Welshmyr had not procured the patent, and that petitioner had paid another person for that service. The case was put to a jury and a verdict was given for the petitioner, which, on motion of the defendant, was set aside. The petitioner then filed a supplemental petition in which he charges, that not understanding the English language, the defendant falsely and deceitfully interpreted it to him, and thus fraudulently procured the bond, expressed in different terms from what was intended by the petitioner. This allegation was fully denied by the defendant in his *(38) answer. The cause was again put to the jury, and a verdict returned in the following words: “ We, the jurors, find that there was a mistake as to the terms of the bond as set forth in the petition;” upon which verdict the following judgment was entered.
“ "Whereupon it was ordered and decreed by the court that the said Zimmerschitte be not compelled to make to the said Charles Kesler a deed to the land mentioned in the bond given from Zimmerschitte to Kesler, as referred to in said petition on which this suit is brought, but that the right in law of said land be vested in said Zimmerschitte, and the said bond be declared null and void; and that the said Kesler pay all costs of this suit in this behalf expended.”
From the statement of facts, it appears that witnesses were called by the plaintiff. The first testified that the plaintiff understood enough of the English language to comprehend the substantial part of a deed; and the second testified that the plaintiff did not understand the English language, and was in the habit of calling on witness to explain for him; witness knew nothing of the transaction; the third, that he had not known the plaintiff long; thinks he speaks the English language very badly. One witness, only, was called by the defendant who testified that Welshmyr was a man of correct business habits, unusually so, and he believed he spoke German. The bonds from Welshmyr to the defendant, and from the plaintiff to the defendant were given in evidence. The authentication of the latter showed it to have been acknowledged by the plaintiff some eight months after it was made.
There was no exception to the charge of the judge, and of course it cannot be made the ground for reversing the judgment. It however appears in the record and is obnoxious to the objection of being altogether too vague and indefinite; it does not point the attention of the jury to the important and material issue presented for their consideration; and perhaps to this cause may justly be ascribed their defective finding.
The material averment of the plaintiff was, that fraud had been practiced on him; this was not made in the original petition; it is there only alleged that a mistake was made by him. A mistake is, doubtless, often the ground of relief. But then it is under this qualification, that if the party was not drawn into the commission of such mistake by the agency of the defendant, he cannot be relieved without placing the defendant in the same situation he was in before the transaction took place. This is a principle of equity that will not need the weight of authority to sustain or sanction it. If the defendant in the transaction acted with good faith he cannot be ex *(39) posed to loss from the mistake of the plaintiff. If, however, the defendant acted fraudulently and deceitfully, as is charged in the supplemental petition, it is just and proper that he should take the consequences as a punishment for such fraud.
From the plaintiff’s averment in his petition it is manifest that in giving his bond to the defendant Kesler, he was influenced by his confidence in "Welshmyr. He says in emphatic terms “ that he, the petitioner, believing the said Welshmyr would do and perform his part of the contract aforesaid,” etc., showing conclusively in whom he placed his trust. If Welshmyr deceived him or if he was willing to take, as he certainly did, the risk of both the good faith of Welsh-myr and the contingency of his living to perform his contract, by no rules of equity jurisprudence can he now ask to throw the loss on Kesler. It is a well established rule in courts of equity that he who trusts most, where one of two innocent persons' is to suffer, shall lose most. 13 Wend. 572; 4 N. H. 455.
But the plaintiff’s averment, as above quoted, can hardly be reconciled in his supplemental petition. If the bond ought, in good faith, and according to plaintiff’s understanding, to have been differently expressed so as to have made it only obligatory on the performance by Welshmyr of his contract, then was no confidence placed by him in Welshmyr beyond the legal liability. Yet he avers that it was made in the confidence that the contract would be performed.
The defendant purchased and paid his money on the faith of the plaintiff (who held the legal title) that he would convey according to his bond. The plaintiff knew it at the time, and it would be great injustice to throw the loss upon the defendant occasioned by the failure of a third person, trusted and confided in by the plaintiff and not by the defendant. It is analogous in principle to a person standing by and seeing property sold to an innocent purchaser, in which he had the best title and failing to make his title known. In such a case no relief would be given to the holder of the good title, but the innocent purchaser would be protected. 2 Yerg. 395; 1 Story Eq. Jur. 387.
The verdict of the jury, if it had been responsive to the issues, would have decided whether the deceit and fraud charged could be brought home to the defendant. But that most material issue is not embraced in the verdict, and they find a naked fact that is not material. It may be true, as I have endeavored to show, and yet afford no ground of relief. No judgment or decree ought to have been given upon it. It should have been set aside as a nullity. If, however, the plaintiff had insisted on a decree after such verdict, it would have been *(40) like going on to a .hearing on the bill and answer, and the decree should have dismissed the bill because there was no testimony directly or indirectly in support of the material averment in his petition; and it was fully answered by the defendant in an unequivocal denial. Because, therefore, the verdict of the jury was not responsive to the issue, and no decree or judgment can be rendered on it, the said judgment and decree is reversed and the cause remanded.