B. H. GRUBE, Appellant,

v.

DONNELL EXPLORATION COMPANY,
A Partnership, et al., Appellees.

No. 5134.

Court of Civil Appeals of Texas.

El Paso.

Dec. 7, 1955.

Rehearing Denied Dec. 28, 1955.

Perkins, Bezoni & Casebier, Midland, Warren Burnett, Odessa, for appellant.

Turpin, Kerr & Smith, Raymond A. Lynch, Midland, Stowe & Harmon, Odessa, for appellees.

McGILL, Justice.

Appellee filed this suit against appellant to recover a balance claimed to be due for drilling a well for oil and gas to be known as the J. D. Tubbs No. 1 in Winkler County. Appellee alleged that he started to drill the well and continued drilling in accordance with the contract until appellant breached the contract by instructing appellee's tool pusher to shut the well down. He alleged that the contract depth was four thousand feet, and that appellant shut the well down when he drilled to exactly 2,806 feet. The contract provides that the owner agreed to pay the contractor for drilling the well $5 per lineal foot of hole drilled from the surface of the ground to a depth of 4,000 feet or to such lesser depth, if the well be completed as a producer at a lesser depth. It further contained the following provisions:

"Ninth: In addition to the payment for drilling the well on the per foot basis as hereinabove provided for, the Owner agrees to pay the Contractor for day work at the rate of Two Hundred and Fifty Dollars ($250.00) per twenty-four (24) hour day for the work necessary in testing, treating, cleaning out, swabbing, plugging or completing said well on production, providing, however, that Owner shall not be charged with adequate shutdown time for cementing

and any reasonable shutdown time not to exceed four (4) days for testing the well after the well has been drilled in.

Tenth: Day work will become effective at the time any formation is acidized, shot or hydrofraced. If oil, gas or water is encountered in quantity enough to slow drilling down, day work will become effective."

The jury found in answer to special issues that water was encountered while drilling, in quantity enough to slow drilling down for a total of 122 days and 4 hours; (this was Special Issue No. 1) that appellee had drilled 1,578 lineal feet of the hole on a footage basis; that the drilling work, material and services performed and furnished by appellee were of the reasonable value of $44,421.67; that appellant directed appellee's tool pusher to shut down the well on April 4, 1952; that appellee on April 4, 1952 was ready, willing and able to continue drilling and to drill the well to a depth of 4,000 feet. The court rendered judgment for appellee in the sum of $24,-421.67, thereby giving appellant credit for $20,000 which had been paid to appellee.

The basis for a substantial part of the amount sued for was that the appellee was operating under the day work provision of the contract and the appellant contends that he is not liable for such work because he did not receive notice, actual or otherwise, until about April 4, 1952, that appellee claimed to be operating on a day work basis for a large part of the time. The court sustained the objection to parol testimony by which appellant attempted to prove that there was a well established custom for the driller to give notice to the owner when he went on a day work basis. The court excluded evidence of such custom and such action is assigned as error. We think there was no error in excluding evidence of such custom for several reasons. In the first place, such custom was not pleaded by appellant and it seems to be well settled that if a custom is relied on to establish liability or defeat liability, such custom must be pleaded. Than-

nisch Chevrolet Co. v. Kline, Tex.Civ.App., 134 S.W.2d 433, Civ.App. writ refused. Furthermore, such custom must have been established for a sufficient length of time to have become generally known, 42 Tex. Jur. 831–832, Sec. 3, and must be certain and uniform. Id. 832, Sec. 4. Appellant did not show or offer to show that the witness had any knowledge of these matters, and there is no showing that the custom was generally known, and had been established for a sufficient length of time to become generally known; that it was certain and uniform; that it was notorious; was known to the parties to the contract, or that the parties contracted with reference to it. For these reasons the court did not err in excluding the proffered testimony as to custom and usage, and appellant's points to the contrary are overruled.

By points 9 and 10 the appellant contends that the trial court erred in submitting Special Issue No. 1 because there was no evidence to support an affirmative finding to such issue, since a proper construction of the contract reflects that the conditions precedent to an application of the "water" provision did not occur. We overrule these points. In our opinion the provision that day work would become effective if water was encountered in quantity enough to slow drilling down applies to any drilling—not merely to drilling when the formation was acidized, shot or hydrofraced.

Special Issue No. 6 inquired whether B. H. Grube on April 4, 1952, directed the Donnell Exploration Company tool pusher to shut down the well. The jury answered in the affirmative. Appellant contends that the court erred in submitting such issue because there was no evidence to support an affirmative answer thereto, and further that the court erred in overruling the defendant's exceptions to the submission of such issue because the preliminary statement made by Jarman, appellee's tool pusher, and the answer thereto of defendant Grube

"Well, we got in a discussion about the cost and who was footing the bills, and I told him I considered it was day work, and he said if I did, to shut the son-of-a-bitch down."

could not as a matter of law be a direction to stop drilling. We think there could not have been a more clear and emphatic direction to stop drilling than is evidenced by the above language. Grube had already been informed that in the opinion of the driller he was on day work, and there was no misunderstanding as to Jarman's position in this respect. Grube certainly knew that Jarman considered the work in question was being done on a day work basis, and by the language used he emphatically indicated his intention not to pay for the work on a day work basis, but rather to stop it. We think the court was not only justified, but that it was his duty to submit special issue No. 6, and that the evidence is almost conclusive in support of the jury's answer thereto. This point is overruled.

Points 6 and 7 complain of the court's action in entering judgment based on the jury's answer to Special Issue No. 5 and in the action of the court in submitting Special Issue No. 5, which inquired as to the reasonable value of the services furnished by the Donnell Exploration Company for B. H. Grube. We agree that quantum meruit could not be a basis for recovery for the work performed by appellee. However, the judgment is not necessarily based on quantum meruit, but on the contract price of $5 per foot or $250 per day. It is not necessary to base the judgment on quantum meruit, and we think the court did not do so. This point is therefore overruled.

The judgment of the trial court is affirmed.