ARNOLD D. KAMEN & CO. et al.,
Appellants,

v.

Harold S. YOUNG, Appellee.

No. 17595.

Court of Civil Appeals of Texas,
Dallas.

April 9, 1971.

Rehearing Denied April 30, 1971.

Joe B. Abbey, Haynes & Boone, Dallas, for appellants.

Nathan Allen, Jr., Hunter, Greenfield & Allen, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

This action was brought by Harold S. Young against Arnold D. Kamen & Co., a partnership, and Arnold D. Kamen individually, seeking to recover commissions alleged to be due and unpaid arising out of his employment with the company as manager of its commodity brokerage office in Dallas. Both the partnership and Kamen answered and alleged that on or about August 28, 1967 an oral agreement had been entered into whereby Young was to become manager of the branch office of the partnership in Dallas for which he was to be paid a graduated percentage of the commissions realized on sales by Young, plus a percentage of the commissions of any salesmen which Young hired, less one-half of the expenses attributable to the Dallas office. It was further alleged that by the terms of the oral agreement 100 per cent of "any customer's deficit balances in the Dallas office" would be subtracted from Young's net commissions; that Young failed to maintain margin requirements of his customers and incurred deficits in the total amount of $34,382.80 and that after deducting the said losses from Young's gross commissions due he was not entitled to recover any commissions. Young responded to these pleadings by specifically denying that he had agreed to assume 100 per cent of customer deficits and further pleaded that any loss sustained by Kamen came about or resulted from conduct and actions of and directed by Kamen individually for which Young would have no legal responsibility.

The case was tried to the court and a jury. The parties stipulated that Young had earned $87,284.66 gross commissions during the years 1967 and 1968 while employed as manager for Kamen. It was also stipulated that Young would accept certain sums as proper deductions from his gross commissions.

The case was submitted to the jury on three special issues. Issue No. 1 inquired as to the amount of Dallas office operational expenses of Kamen which Young had agreed to share equally with Kamen as charges against his gross commissions. The jury responded "$24,264.77". Issue No. 2 asked the jury to find whether Young had agreed with Kamen "that 100% of any customer deficit balances, if any, of the Dallas office of Arnold D. Kamen & Co., would be deducted from commissions due Harold S. Young?" To this the jury answered "Yes". In Issue No. 3 the court asked the jury to find the total amount of Dallas office customer deficit balances which should be deducted from Young's commissions under the agreement they may have found in answer to Special Issue No. 2. The jury answered "$7,758.40". Based upon this verdict, together with stipulations, the court entered judgment for Young against both defendants for $13,814.14, together with interest, attorney's fees and costs.

In eleven points of error appellants challenge the judgment. We find that we cannot consider appellants' Point of Error No. 2 relating to alleged improper comments of counsel during the trial for the reason that the matters complained of were not presented to the trial court in the motion for new trial. In a case tried before a jury errors which are not brought to the attention of the court upon presentation of a timely and properly filed motion for new trial are waived and are not preserved for appellate review. Rule 374, Vernon's Texas Rules of Civil Procedure; Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960); and Cain v. Zurich Insurance Company, 426 S.W.2d 575 (Tex.Civ.App., Dallas 1968).

In their Point No. 1 appellants contend that the answer of the jury to Special Issue No. 3 is contrary to the great weight and preponderance of the evidence. Our judicial review of this point requires us to examine and consider all of the evidence relevant to the jury finding. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951). We have complied with this rule and summarize briefly the material testimony.

Appellant, Arnold D. Kamen & Co., is a commodity brokerage company and a member of the Chicago Mercantile Exchange. Its main office is in Chicago, Illinois with branch offices in other cities throughout the United States. During the latter part of August, 1967 appellee Harold Young had a telephone conversation with Arnold D. Kamen, the principal partner of Arnold D. Kamen & Co., during which he suggested the establishment of a commodity brokerage branch office in Dallas. Mr. Kamen expressed interest and on August 28, 1967 flew to Dallas where he had a lengthy conference with Young. In this conference it was orally agreed that Young would open and operate a branch office for Arnold D. Kamen & Co. in Dallas with duties as office manager. Pursuant to the verbal agreement between the two men Young would be paid a percentage of the gross commissions plus a percentage of the commissions of any salesmen which he hired, less one-half of the expenses attributable to the Dallas office. It was also agreed that each of the salesmen which Young hired for the partnership would be personally responsible for the deficits in his customers' accounts. By the term "deficits in customer accounts" was meant that where the required margin of a customer was depleted of funds and there was an actual deficit owed to Arnold D. Kamen & Co. by virtue of market losses. These deficits were referred to in the trade as "red balances".

To this point in the record there is no conflict in the testimony. However, the remaining provisions of the oral agreement of August 28, 1967 relating to the responsibility of Young for deficits or "red balances" are sharply in conflict. Kamen testified that as a part of the oral agreement Young was to be personally responsible for 100 per cent of *all* deficits or "red balances".

Young unequivocally and positively denied Kamen's version of this part of the oral agreement. He said that when Kamen raised the question as to the possibility of "red balances" and stated that he, Young, would be responsible for same that he absolutely refused to enter into such an agreement. He said that after much discussion it was agreed between him and Kamen that in the event "red balances" should occur the parties would consider each one individually and then mutually agree on the disposition of such balances.

A branch office of Arnold D. Kamen & Co. was opened in Dallas approximately the first of September, 1967 with Harold Young as manager. Young continued to operate the office until July, 1968. At that time, due to controversies over deficits that had occurred, Young ceased to be manager but continued to work in the office as an employee for a short time. During the period when Young was manager of the office he employed several commodity salesmen with the understanding that each salesman would be personally responsible for his customers' deficit balances, if any. During the period between September, 1967 and June, 1968 the company transacted a large volume of commodity trading. Each month Young received a check for his commissions but testified that he did not receive a statement from Arnold D. Kamen & Co. which revealed the amount or itemization of deductions and charges from his gross commissions. During this time several customer deficits or "red balances" occurred. Some were collected from the customer and others were not. In some instances when customer balances appeared to be in deficit Young personally agreed to accept responsibility for same. For example, in May, 1968 C. Cal-

loway, a customer of Young, incurred a deficit and Young expressly agreed that this might be applied to his commissions. In March and May of 1968 G. Young, the wife of Harold Young, incurred deficits in her account and in each instance Young agreed specifically to assume these deficits and permit the same to be charged against his commissions. In May of 1968 several customers had deficit balances but Mr. Young testified that he specifically refused to accept these deficits. However, Kamen & Co. did deduct the same on their records and charged them to Young's account. In July, 1968 due to the condition of the market nine customers of the Dallas branch office incurred considerable deficit balances due to losses in the commodity market. The total of these balances amounted to $30,584.80. The largest of these deficit balances was that of Dr. W. J. Langley which totaled more than $21,000.

Subsequent to these major losses in July, 1968 Young and Kamen had a conference in Dallas during which Young specifically denied that the nine deficits could be charged against his commissions.

While appellants attack only the jury finding in response to Issue No. 3 it is important to consider Issue No. 2 because Issue No. 3 was to be answered by the jury only in the event of an affirmative answer to Issue No. 2. The trial court submitted Issue No. 2 as stated above.

It is to be observed that Issue No. 2 was couched and framed in the very precise wording of appellants' pleading. In their answer appellants asserted that Young had agreed to have deducted 100 per cent of "any" deficit customer balances. It was not alleged that Young had agreed to assume "all" such balances. It is also to be observed that the issue as submitted does not relate to nor is it confined to a particular date or time. It obviously was intended to inquire as to the actual contract made by the parties and the term "any" used therein was to be considered as it was by Young and Kamen. Moreover, when

the Issue No. 2 was incorporated in the charge appellants leveled no objection to the form thereof. Thus, in effect, the jury in answer to Issue No. 2 found that Young had agreed to assume "some" or "any" of the deficit balances as testified by him. Then, in answer to Issue No. 3 they found that such customer deficit balances which Young had agreed to assume amounted to $7,758.40.

When we analyze all of the evidence relative to the jury's answer to this question we cannot say that such answer is contrary to the great weight and preponderance of the evidence. The figure found by the jury amounts to more than the balances admitted by Young. Confronted with the conflicting testimony of the interested parties the jury chose to believe part of Young's testimony and part of Kamen's testimony in arriving at their answer to Issue No. 3. Obviously, the jury chose to believe that Young did not agree to assume the Langley deficit balance but this they had a right to do. The testimony relating to the Langley balance will be discussed more in detail in connection with another point.

The jury heard the testimony of the witnesses and judged the credibility and weight to be given their testimony. We are not authorized to substitute our judgment for that of a jury where we find that such is not so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Appellants' Point 1 is overruled.

 Prior to the submission of the charge to the jury appellants timely requested the court to submit their special requested Issue No. 6 reading as follows:

"Do you find from a preponderance of the evidence that the usual and customary practice of the commodity trading industry is to determine brokers' 'net commissions' after deductions of losses incurred from the deficit of the customers?"

The court refused to submit the special issue and such forms the basis for appellants' third point of error.

Appellants' answer to appellee's cause of action asserted first that there was an express contract or agreement between Kamen and Young whereby Young was to assume 100 per cent of "any" customer deficit balances, and secondly that the provision of the employment agreement "is a usual, customary and reasonable provision in the commodity brokerage business as an incentive for the broker to watch the margin requirements in each of their customer's accounts; that the Plaintiff Harold S. Young knew and understood the condition of his oral employment agreement was usual, customary and reasonable * * *." Kamen testified that the agreement between him and Young was usual and customary in the commodity trade industry. Young did not testify concerning any usage and custom nor was he asked any questions concerning same.

■ We do not think the court's refusal to give the requested issue constituted error. Appellants' pleading of "custom and usage" was in the nature of an explanatory pleading to substantiate their primary allegations concerning an express oral agreement with specified terms. The jury found the existence of the very contract pleaded by appellants. It has been held that evidence of custom is not competent to contradict the plain and unambiguous terms of an express contract nor to vary, control, impair, restrict, or enlarge the explicit language of the agreement. State Nat. Bank of Houston v. Woodfin, 146 S.W.2d 284 (Tex.Civ.App., Galveston 1940, writ ref'd). Moreover, the testimony of Kamen as to custom is too limited to justify the submission of the issue. To establish a custom and usage there must be evidence that the custom was generally known, or had been established for a sufficient length of time to become generally known, and that it was known to the parties to the contract or that the parties had contracted with reference to it. Grube v. Donnell Exploration Company, 286 S.W.2d 179 (Tex.Civ.App., El Paso 1955, writ ref'd n. r. e.); First Nat. Bank of Coleman v. First Nat. Bank of Brownwood, 278 S.W. 188 (Tex.Com.App.1925). The record does not contain this essential evidence. Finally, appellants only requested the one issue whereas, in order to establish the custom and usage it would be incumbent upon appellants to also prepare and submit an issue relative to the knowledge of the alleged custom and usage by Young. This was not done. Appellants' Point 3 is overruled.

■ We next turn to a consideration of appellants' Point 7 wherein complaint is made concerning the act of the trial court in refusing to permit appellants to file their first supplemental answer.

The case proceeded to trial on the first amended original petition of appellee and the first amended answer of appellants. The contents of these pleadings have been discussed in connection with our disposition of the first point of error. Nowhere in appellants' amended answer were there any allegations concerning breach of contract. Nine days after the verdict of the jury had been returned and received appellants filed a motion to permit them to file their first supplemental answer in which, for the first time, they alleged a breach of contract by Young in that he failed to comply with his duties in the account of Dr. W. J. Langley by (a) failing to maintain a margin in Langley's account; (b) purchasing commodities in Langley's account before receiving payment for margin; (c) failing to liquidate Langley's account when the margin was depleted and (d) purchasing additional commodities in Langley's account when the margin was depleted. The trial court refused to permit the filing of the instrument.

In Rule 67, T.R.C.P., it is provided that where amended pleadings are necessary to cause same to conform to the issues tried by express or implied consent of the parties same may be filed, by leave of court,

after notice, "at any time up to the submission of the case to the Court or jury * * *." In Precision Motors v. Cornish, 413 S.W.2d 752 (Tex.Civ.App., Dallas 1967, writ ref'd n. r. e.), we held that while the trial court had discretionary power in the matter of permitting the filing of a trial amendment, such action would be reversible error where same was filed after return of the jury verdict.

The issues of breach of contract were not tried by express nor implied consent of the parties. Appellants' seventh point is overruled.

■ Appellants' fourth, fifth and sixth points of error are predicated upon the theory of breach of contract by Young. In these points appellants take the position that since the evidence demonstrates, as a matter of law, that Young violated and breached the terms of his contract, especially with reference to the account of Dr. W. J. Langley, that the trial court erred in rendering judgment upon the verdict.

In overruling appellants' seventh point of error we have held that the trial court was correct in denying appellants' belated tender of supplemental answer charging breach of contract. Accordingly, these points now being considered must be overruled because the same are not supported by pleadings. In addition thereto we are convinced that the record does not establish the various alleged breaches, as a matter of law, but, on the contrary, the testimony is conflicting on these issues. At no time did the appellants tender or request issues to be submitted to the jury on the questions of breach of contract so the same must be considered as having been waived. Appellants' fourth, fifth and sixth points are overruled.

■ The eighth point of error complains of the action of the trial court in refusing to admit into evidence Defendants' Exhibit No. 9 which is alleged to have been a "computer print-out" of statements of accounts, purchases and sales of W. J. Langley. The exhibit, consisting of eight pages of printed data, was tendered into evidence by appellants who contended that the same was admissible under the Business Record Act, Vernon's Ann.Civ.St., Art. 3737e. Kamen testified that the information contained in the records was initially punched on key punch cards by employees in the Chicago office of Arnold D. Kamen & Co. and taken from written order blanks and then sent to a tabulating service which ran them through a computer and returned the "print-out" in the form of the tendered Exhibit 9. Kamen testified that Exhibit 9 was part of the business records of Arnold D. Kamen & Co. and were kept on every customer. Appellee objected to the introduction of the exhibit on the ground that the same did not comply with the requirements of Article 3737e, V.A.C.S., since a proper predicate had not been laid by showing that the original data had been prepared by someone in the company who had personal knowledge of the act or event to be recorded. The trial court sustained this objection.

The trial court was correct in his ruling since there was no proof that the person who prepared the order blanks or other data had personal knowledge of the data or information allegedly punched into the cards. Mr. Kamen did not attempt to testify that he had knowledge of such information but merely said that the cards were punched by a female employee in the Chicago office based upon certain orders not shown in the record. Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298 (Tex.Sup.1962); North Texas Lumber Co. v. Kaspar, 415 S.W.2d 470 (Tex.Civ.App., Dallas 1967, writ ref'd n. r. e.).

In Points Nos. 9 and 10 appellants complain of the action of the trial court in refusing to submit to the jury the requested issues, Nos. 4, 5 and 7, relating to "ratification", "accounts stated", and "accounts settled". Requested Issue No. 4 asks the jury to find whether Young instructed salesmen in the Dallas office that he would deduct

customers' deficit balances from their commissions pursuant to orders from Kamen & Co. Requested Issue No. 5 asks the jury to find whether Young's instruction to the salesmen constituted a recognition of his obligation to deduct customer deficit balances from his commissions. Requested Issue No. 7 asks the jury to find whether Young approved and recognized his obligation to deduct the customers' deficit balances from the "gross commissions" after the "red balances" were incurred and before he quit his employment with the company.

■■■ The essential elements of an "account stated" are transactions between the parties which give rise to an indebtedness of one to the other; an agreement, express or implied, between the parties fixing the amount due; and a promise, express or implied, by the one to be charged, to pay such indebtedness. Central Nat. Bank of San Angelo v. Cox, 96 S.W.2d 746 (Tex.Civ. App., Austin 1936, writ dism'd). Young testified that he had not been supplied with an accounting of any kind prior to the filing of this lawsuit and that he did not expressly or impliedly agree with Kamen as to the amount due. Young testified that he did not know what expenses were being deducted from his net commissions each month and that the net amount would have to be determined after an agreement was reached concerning deductions of certain customer deficits. Thus it is obvious that the essential elements of "accounts stated" are absent and the trial court was justified in not submitting the issue as tendered.

■■■ There was no account stated and there was therefore no account settled. The trial court was justified in refusing the submission of the issue relative to "accounts settled". Dodson v. Watson, 110 Tex. 355, 220 S.W. 771 (1920).

■■■ As to the issue of "ratification" appellants argue that when the question of customer deficits reached its climax in July, 1968 Kamen and Young had a conference during which Kamen says that Young acknowledged responsibility for all the customer deficits. Appellants say that this constitutes ratification. However, the tendered Special Issues Nos. 4 and 5, made the basis of appellants' points of error, do not relate to this particular transaction at all but have to do with agreements between Young and salesmen employed by him at the beginning of his employment in 1967. Thus it is obvious that even if the issue of ratification had been raised by the evidence, which we need not decide, appellants have failed to prepare and submit to the court appropriate requested special issues in accordance with Rule 279, T.R.C.P. We observe no error in the action of the trial court in refusing the tendered requested issues and therefore appellants' points are overruled.

■■■ In their eleventh, and final, point of error they seek to avoid the effect of the judgment by the application of the doctrine of equitable estoppel. It is argued that since the undisputed evidence shows that Young had the duty to maintain customer margin requirements, and since he failed to perform these duties and assumed a course of conduct with customers antagonistic to his employer he is thereby estopped from seeking benefits under his employment agreement.

It is apparent from appellants' brief that the principal basis of this point of error revolves around the testimony concerning the customer deficit loss in excess of $20,000 incurred as a result of trading by Dr. W. J. Langley. The evidence is clear that in July, 1968 Dr. Langley's account dropped below margin requirements, due to market conditions, at which time Young immediately went to Dr. Langley and secured from him a check in the sum of $2,500 to apply to margin. Later, due to further market conditions unfavorable to Langley's account, Young again went to Dr. Langley, this time at the hospital at night, and secured from him a check in the sum of $15,000 to apply to margin requirements of his account. Both of these checks were forwarded to the Chicago office in due

course. However, Dr. Langley later issued a "stop payment" order on the checks and they were not paid. Kamen became upset concerning the status of Dr. Langley's account and called Young on the telephone from New York and instructed him to close out the Langley account. Young demurred, whereupon Kamen personally instructed the Chicago office to close out the account. Shortly thereafter Langley, being upset by Kamen's action in closing out his account, called Young and asked him to buy additional contracts on the market. Young refused to do so until he talked with Kamen on the telephone. At first Kamen refused and then, according to Young, Kamen consented to the purchase of the additional contracts for the Langley account. Additional losses resulted from the Langley trading and, as stated, his ultimate customer deficit amounted to more than $20,000.

Appellants seek to apply an equitable principle which has long been recognized in Texas. This equitable principle is that where one of two parties to a contract must suffer by the faults and acts of a third person, the one who trusted the wrongdoer must bear the loss rather than the other. They argue that Young placed trust and confidence in Langley, and acted thereon, causing the injury to come about, and therefore he, rather than Kamen, who was blameless, must bear the loss. Kesler v. Zimmerschitte, 1 Tex. 50 (1846); State v. Mason, 362 S.W.2d 419 (Tex.Civ.App., Austin 1962, writ ref'd n. r. e.); Jarbe Oil Company v. Birdwell & Son Drilling Co., 335 S.W.2d 394 (Tex.Civ.App., Eastland 1960, writ ref'd n. r. e.); Luse v. Crispin Company, 344 S.W.2d 926 (Tex.Civ.App., Houston 1961); and 22 Tex.Jur.2d, Equity, § 50, pp. 599–600.

However, we cannot agree with appellants that the principle of equity asserted may be applied to the factual situation here presented so as to defeat the judgment. The evidence does not establish, as a matter of law, that Young assumed a course of conduct with Langley which was antagonistic to his employer. To the contrary, the evidence demonstrates that Young was active in seeing to it that Langley's account was kept current. It is not shown that Young's act or conduct, or any of his omissions to perform his duty, brought about Langley's cancellation of the margin checks. Furthermore, and most importantly, the record is undisputed that Kamen personally approved and acquiesced in the final purchase of commodity contracts on Langley's account after having closed the account a short time previously. In the light of this record it cannot be said as a matter of law, that Young must bear the entire guilt for the loss and that Kamen was wholly blameless. The essential elements of the doctrine of equitable estoppel or "estoppel in pais" are not shown to exist in this case, as a matter of law, and accordingly appellants' position may not be sustained. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952).

All of appellants' points are overruled. The judgment of the trial court is affirmed.