**FLAGG ,REALTORS, INC., Appellant,**

v.

**Velma HARVEL, Appellee.**

No. 8422.

Court of Civil Appeals of Texas,
Amarillo.

April 22, 1974.

Rehearing Denied May 20, 1974.

Brock, Waters & Galey (Charles E. Galey and Donald E. Cummings), Lubbock, for appellant.

Garner, Boulter, Jesko & Purdom (Jack O. Nelson, Jr.), Lubbock, for appellee.

ELLIS, Chief Justice.

Defendant real estate company has appealed from a judgment entered by the trial court awarding plaintiff-salesperson disputed compensation on three certain transactions, plus interest on one of the transactions at 10 per cent per annum from the time it was closed until the date of judgment; and plaintiff complains, by way of cross-point, of the denial of attorney's fee. Reformed and affirmed in part and reversed and remanded in part.

At all times material to this suit, Velma Harvel, plaintiff-appellee, hereinafter referred to as "Harvel," worked with Flagg Realtors, Inc., defendant-appellant, hereinafter referred to as "Realtor," under an agreement providing for a sharing or dividing of Realtor's total commissions resulting as a consequence of her efforts. Under this agreement, Harvel was to secure listings of property for sale through Realtor's office and secure purchasers for property so listed. Both Realtor and Harvel are licensed to sell real estate under Article 6573a, Vernon's Ann.Civ.St., Texas Real Estate Licensing Act.

This controversy arose over three transactions. The undisputed evidence is that Harvel secured a purchaser, R. P. Brown, for property known as the Bacarrat Apartments which was owned by Kenneth Flagg, operating as Flagg Homes. This same Kenneth Flagg also owns one-half interest in Flagg Realtors, Inc. The detailed listing sheet concerning this property was introduced into evidence and contained a notation that the seller (Kenneth Flagg) would be willing to take a second lien note as part of the consideration. This sale of Kenneth Flagg's property was closed on May 4, 1972, with certain oral modifications of two written contracts which were involved in the transaction.

A part of the recited consideration was a six year note in the amount of $12,300, executed by Brown with Flagg Realtors as payee which was accepted by Realtor, together with $3,417.50 in cash, as the total sales commission. Realtor sent Harvel a check in the amount of $1,708.75, which was 50 per cent of the $3,417.50 cash commission received by Realtor, and which she subsequently negotiated.

Realtor terminated the association with Harvel on May 12, 1972, and sent her a copy of a promissory note in the amount of $6,160. Realtor was the maker of such note and Harvel was payee. It was payable upon the payment of the R. P. Brown note. A letter dated May 16, 1972, accompanied the note from Realtor indicating that the note was for Harvel's share of the commission on the Brown sale and that Realtor would disperse to her 50 per cent of any or all payments received on the note.

It is also undisputed that Realtor's commission was 5 per cent of the total sales price of the Bacarrat Apartments, and that the sales price was $342,300; however, Realtor contends that the commission should be calculated on the basis of the sum of only $340,000 since Kenneth Flagg, seller, was required to pay certain expenses he had not originally anticipated. Realtor contends that Harvel is only due, in cash, her proportionate share of the money which it received in cash, while Harvel contends she was entitled to be paid her total share of the commission in cash at the time of closing the sale. The trial court, sitting without a jury, found that Realtor was obligated to pay Harvel $6,791.25 in cash as of the May 4, 1972 closing date.

The second transaction concerns a property known as the Gallant property. It is

undisputed that Harvel secured a buyer for the property, and that she suggested and agreed to a six month deferred commission because Realtor accepted a promissory note which included the commission. Harvel does not dispute her receipt of certain payments and that she accepted her share of the deferred commission. She contends, however, that she is also entitled to receive her proportionate share of the interest received by Realtor on the deferred commission occasioned by the acceptance of the note. After hearing the evidence, the trial court found that Realtor was obligated to pay Harvel the sum of $29.60 on this transaction.

The third transaction concerns a property known as the Arbuckle property. Harvel claims a 20 per cent listing commission by way of a special incentive program, and Ted Ratcliffe, president of Realtor, testified that Realtor had credited but not paid Harvel a 10 per cent listing commission of $117.27. The trial court awarded that sum to Harvel.

By points one, two, three and five, appellant contends that the court erred in finding that: Realtor agreed to pay 50 per cent of the sales commission at the consummation of a sale regardless of whether Realtor received its total commission in cash; Realtor was obligated to pay in cash the sums so found; Realtor was without justification or excuse in refusing to pay the sums demanded by plaintiff; and Realtor agreed to pay Harvel a listing fee on commissions not yet received. In the fourth point, appellant contends that the court erred in failing to find that no breach of the contract had occurred. The points are based upon the contention of appellant that there is no evidence to support such findings or, alternatively, the evidence is insufficient to support such findings, or that the evidence is so insubstantial and lacking in probative force that the findings are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong.

Harvel testified that she was operating under an oral agreement whereby she would share in total sales commissions upon the performance of certain services. The services were defined as sales and listing of property. Upon a sale she would normally receive 10 per cent of the total sales commission paid by the seller for a listing she obtained and, when she secured a purchaser, she would share 50/50 in the total sales commission received by Realtor.

Furthermore, Harvel testified that any arrangement for a deferred commission was required to be negotiated prior to closing. She had agreed and suggested that a note be taken by Realtor on the Gallant transaction prior to closing the sale. By the taking of the note on the Gallant transaction, she agreed that her share would be deferred until Realtor was paid the first six months payments on time. The commission was payable in six months. She further testified that she did not agree to accept a deferred commission on the Bacarrat Apartments either prior to or after the closing of the transaction on May 4, 1972, and that her claimed commission has been due to her in cash since that closing date.

Deen Ellison, a salesperson working for Realtor during the same period as Harvel and called as a witness by Realtor, testified that she was working under an oral agreement similar to that of Harvel. Such agreement called for payment of commissions as they were received by Realtor and, if a note was involved, an agreement prior to or at closing was made by the selling agent, seller and Realtor, in which event the commission received by the salesperson would then be deferred until the note was paid. Ratcliffe testified by deposition, in response to questions by Harvel's attorney, that generally the provisions set out in the sales contract control the payment of the commission unless special arrangements are otherwise made.

It is not disputed that the Bacarrat transaction was closed on May 4, 1972, on

oral modification of the written contract. The testimony of Ratcliffe was that Kenneth Flagg agreed to accept $340,000 plus expenses of obtaining a new loan, which he testified were approximately $2,300, and that $342,300 was the actual consideration received. Ratcliffe also testified that no listing fee was ever paid on Flagg owned properties; therefore, the undisputed 5 per cent commission based upon $340,000 agreed selling price would be $17,000, and 50 per cent to Harvel would be $8,500 less the undisputed cash payment of $1,708.75, which was equal to the court's finding of $6,791.25 due as of the May 4, 1972 closing date.

The trial court also found that Realtor was obligated to pay in cash $117.27 to Harvel on the Arbuckle transaction. Ratcliffe admitted that "$117.00 and some odd cents" was credited to Harvel's account for a listing commission on the Arbuckle property and that such sum had not been paid.

The trial court found that Realtor was obligated to pay Harvel $29.60 as a result of the Gallant transaction. The record indicates that Harvel agreed to a deferred commission included in an interest bearing note for both her share and Realtor's share of the commission, and that she was entitled to a balance of $29.60 in connection with such transaction.

In determining appellant's no evidence points, all evidence must be considered in a light most favorable to appellee in whose favor the judgment has been rendered, and every reasonable inference deducible from the evidence is to be indulged in her favor. Harbin v. Seale, 461 S.W.2d 591 (Tex. 1970). From a review of the evidence, the circumstances and all reasonable inferences therefrom, we have concluded that appellant's contentions that there is no evidence to support the trial court's findings that Realtor agreed and was obligated to pay to Harvel, in cash, at the conclusion of the transactions, the sums so found, are not sustainable.

■ ■ Appellant contends that the evidence establishes a custom and usage in the real estate business that it is common and usual to accept a commission note and thereby deferring compensation to the sales agents. Therefore, appellant contends that any agreement between Harvel and Realtor includes this custom and usage as a part of such agreement. In order to establish a custom and usage it is necessary to show that it is generally known to the parties, certain and uniform or the parties contracted with reference thereto. Kamen v. Young, 466 S.W.2d 381 (Tex.Civ.App.— Dallas 1971, no writ); Grube v. Donnell Exploration Company, 286 S.W.2d 179 (Tex.Civ.App.—El Paso 1955, writ ref'd n. r. e.). We find that the evidence does not support such contention made by the appellant. Harvel testified that generally if a deferred commission by way of a note was to be involved in a particular transaction, there would be a specific agreement to that effect between the selling agent, the seller and management of Realtor; and that such an agreement was made with respect to the Gallant transaction prior to closing. Ratcliffe testified that generally the contract stipulates specifically how the commission is to be paid, and that any special arrangements are made at the time of closing of the sale. Ellison testified that any arrangement for deferred commission would be agreed to prior to closing by selling agent, seller and Realtor. It is undisputed that it is not unusual for a note involving commission to be taken, and that if such a note is taken, the selling agent's compensation will be deferred; however, under the evidence it is apparent that the established usage and customer requires that the agent agree on these matters beforehand.

Harvel testified that she did not agree to nor know about the commission note on the Bacarrat transaction prior to closing, although this was disputed by Ratcliffe, and her own testimony on this point was inconsistent. The amount of $29.60 due on the Gallant transaction was undisputed and

a reasonable inference from the testimony as a whole indicated that Harvel was to share in the interest received by Realtor when both had agreed to a deferred commission and Realtor was receiving interest.

The trial court as the trier of the facts is entitled to believe all, part or none of the testimony of any witness and draw its own conclusions therefrom. Further, the court may consider all of the circumstances together with the reasonable inferences therefrom and reach its conclusions by blending all evidence before it, and it is not required to credit all testimony of any witness. Martin v. Gurinsky's Estate, 377 S.W.2d 710 (Tex.Civ.App.—Austin 1964, writ ref'd n. r. e.). In this case, it is apparent that the trial court opted to believe such portions of the evidence, including testimony, physical evidence and inferences therefrom, leading to the conclusion that Harvel and Realtor agreed that commissions would be paid upon consummation of a sale, in cash, unless otherwise agreed, and that Harvel did not agree to or know of the Bacarrat commission note prior to or at the closing.

After carefully considering and weighing all the evidence as required in determining the sufficiency of the evidence, In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952), we have concluded that there is sufficient evidence of probative value to support the court's findings and that such findings are not against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, points one through five are overruled.

By points six through nine, appellant contends that Harvel has waived any right to receive cash for her share of the Bacarrat commission or that she has ratified the acts of Realtor or that an accord and satisfaction has occurred. In order to waive a known right, there must be an intentional relinquishment of such right or intentional conduct inconsistent with claiming it. Massachusetts Bonding & Ins. Co.

v. Orkin Exterminating Co., 416 S.W.2d 396 (Tex.1967). Appellant contends that the evidence indicates Harvel waived her known right to a claim in cash of her share of the Bacarrat commission (1) by not protesting at the time of closing or (2) by cashing the check for the cash portion of the commission received by Realtor. We have carefully examined the record and have determined that the evidence does not support these contentions.

The first of the above contentions is based upon Harvel's alleged knowledge that a commission note was to be taken by Realtor and that when she did not protest at the closing, she thereby waived any right to have her full share paid in cash. Appellant contends that evidence of such knowledge is supplied by inconsistent testimonial declarations which are binding upon her. United States Fidelity & Guaranty Co. v. Carr, 242 S.W.2d 224 (Tex.Civ. App.—San Antonio 1951, writ ref'd). A necessary portion of the test set forth in the above cited case is that any declaration must be deliberate, clear, and unequivocal. The hypothesis of mere mistake or slip of the tongue must be eliminated in order to preclude recovery. In the instant case, although Harvel did make the statement that she knew of the note and that she knew Realtor was to take the note, she was contradicting prior testimony, and on each occasion a possibility of mistake or confusion was raised. It is not questioned that she knew a second lien note was to be executed. The evidence raises the inference that it was not clear to Harvel as to whom the note was to be given, i.e., to Kenneth Flagg as an individual, or Kenneth Flagg operating as Flagg Homes, or to Flagg Realtors Inc. It is the contention of Harvel that Flagg, the seller was to take the note as part of the consideration for the purchase price. A party who testifies as to the existence of a fact is absolutely concluded thereby unless he makes a correction, retraction or explains it by reason of some mistake, oversight, misunderstanding or lack of definite recollection. Griffin v.

Superior Ins., 161 Tex. 195, 338 S.W.2d 415 (1960).

■■■ In the instant case Harvel first testified that she did not know of or expect to take a note for the commission on the Bacarrat transaction. She then testified that she did know of the note and that Flagg Realtors was to take the note as commission; however, she subsequently corrected and explained this inconsistent testimony. After each instance of inconsistent testimony she later explained or corrected the earlier testimony. Therefore, we hold that although the statements were contradictory, this did not necessarily remove the hypothesis that she was mistaken and the statements are not conclusive, but merely raise a fact issue for the court, as the trier of the facts, to determine. Rosales v. Rosales, 377 S.W.2d 661 (Tex.Civ. App.—Corpus Christi 1964, no writ). Further, it is not possible to waive a right unless that right is known. Stowers v. Harper, 376 S.W.2d 34 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.). From a complete review of the record, it is our opinion that there was sufficient evidence of probative value to support the finding of the court that Harvel did not in fact waive a known right to receive cash at the closing of the sale.

Appellant also contends that since it is not disputed that Harvel knew of the note and that it would be taken by Realtor as commission shortly after the closing, she waived any right to receive cash when she cashed the check for her share of the cash received by Realtor. Waiver requires that a right be known and an intentional relinquishment of such right or intentional conduct inconsistent with claiming it. United States Fidelity & Guaranty Co. v. Carr, supra. Each of the various cases cited by appellant in support of such contention involved conduct on the part of the claimant which was definitely inconsistent with the claimant's known right.

■■■ Harvel insists that she did not know of the commission note until after the closing. She refused the proposition that she accept a deferred commission, called Mr. Flagg in an attempt to collect and, on the same day the check was deposited in her account, she contacted an attorney regarding the collection of the balance of her commission. It is our opinion that the evidence is sufficient to support a conclusion that she did not intentionally relinquish nor was her conduct inconsistent with claiming the right to collect cash at the time of closing. Also, Harvel's continued insistence upon receiving cash at the time of closing is consistent with her contention that she had not knowingly ratified the acts of Realtor by accepting the check.

Realtor contends that the Gallant transaction is evidence that the parties had accepted the version of the agreement given by Realtor, thereby ratifying such representations concerning established practices with respect to deferred commissions. In the Gallant transaction, it is undisputed that Harvel agreed, prior to closing, to a deferred commission and the agreement was that Harvel would be paid her share of the commission provided the first six months payments were paid on time. Further, under such agreement, Harvel was entitled to receive her share of the commission "in full" at the end of the six month period, while Realtor, in fact, had received through the *monthly* payments on the note, only a portion of its share. Therefore, the Gallant transaction does not establish that Harvel had agreed to receive her share of commissions at the identical time or in the same manner in which Realtor was actually paid. We hold that it was not error for the court to find that Harvel had not ratified the construction of the agreement placed upon it by Realtor.

■■■ Appellant contends that an accord and satisfaction was effected by acceptance and negotiation of the check for payment of Harvel's share of the cash received by Realtor. Mutual assent of the parties is an indispensable element of accord and satisfaction. It is essential that what is given be offered in satisfaction

and extinguishment of the original demand and that it be so accepted, Call of Houston, Inc., v. Mulvey, 343 S.W.2d 522 (Tex.Civ. App.—Houston 1961, no writ). It must be expressed by acts or declarations with sufficient clarity that creditor is bound to know that his acceptance of the tendered payment will constitute full payment of his claim. H. L. "Brownie" Choate, Inc. v. Southland Drilling Co., 447 S.W.2d 676 (Tex.1969).

In the instant case, Harvel refused to accept the offer of a deferred commission one or two days after the May 4, 1972 closing. The check for one-half of the cash received by Realtor was received by Harvel on May 8, 1972; she was terminated by letter May 12, 1972; she received a copy of a note for one-half of the Brown note on May 15, 1972; she contacted an attorney for collection and deposited the check on May 19, 1972. She also testified that she had contacted Kenneth Flagg, personally, regarding this collection prior to contacting an attorney.

■ From this evidence, it is reasonable to conclude that Harvel did not agree to accept the note and did not accept the check as anything other than as a partial payment. There is no evidence that the offer of the check was conditioned upon accepting the balance to be paid by note. There was no notation on the check or any communication between Realtor and Harvel that would indicate Harvel understood the acceptance was so conditioned. Therefore, it is our opinion that the evidence sufficiently supports the court's conclusion that an accord and satisfaction had not been accomplished. Accordingly, appellant's points six through nine are overruled.

■ By points ten and eleven appellant attacks the trial court's findings that a special relationship existed between Realtor and Harvel under the provisions of Article 6573a, Texas Real Estate Licensing Act, and that Realtor was obligated to pay 10 per cent penalty interest on $6,791.25 from

May 4, 1972. We hold that the evidence does not support such findings as a basis for the portion of the judgment awarding such interest.

Article 6573a sets forth the requirements for licensing as a real estate broker. It is undisputed that both Harvel and Realtor were licensed thereunder. Appellee seeks to sustain the findings of a special relationship under the holding in the case of Moore v. Sussdorf, 421 S.W.2d 460 (Tex. Civ.App.—Tyler 1967, writ ref'd n.r.e.), and the cases cited therein. The court found in that case that when brokers agree to work together on a deal and share a commission on the consummation, it constitutes a joint adventure and that such relationship is in the nature of a particular partnership and is governed by most of the same principles of a partnership, including a fiduciary relationship. Thus, justification of the 10 per cent interest awarded on the sum of $6,791.25 from the May 4, 1972 closing of the Bacarrat transaction is sought upon the ground of breach of a fiduciary relationship.

We have carefully examined Article 6573a and the cases cited by appellee and find that this contention is not sustainable. Moore v. Sussdorf, supra, involves two independent brokers (not associated in the same organization) agreeing to work together on a particular real estate transaction and share the commission. In the instant case, Harvel and Realtor had a continuing relationship with only one real estate establishment involved, that of Realtor. A "broker" is defined by the Act as one responsible for the acts of salespersons operating through him and a salesman is defined as one employed or engaged by, or in behalf of, a licensed broker to do or deal in any act that a broker may engage. Therefore, by the testimony of Ratcliffe and Harvel, and under the Act the relationship established is that of a continuing broker-salesperson association and not a single broker-broker transaction such as that dealt with in Moore v. Sussdorf, supra. Further, a single transaction is char-

acteristic of a joint adventure, Booth v. Wilson, 339 S.W.2d 388 (Tex.Civ.App.— Texarkana 1960, writ ref'd n.r.e.) and a particular partnership. Gilmer v. Graham, 52 S.W.2d 263 (Tex.Comm'n App. 1932, holding approved). Such is not the situation here.

The cases cited by appellee in support of the 10 per cent penalty interest prior to judgment all involve a breach of a fiduciary duty of a different character, such as that of an administrator, executor or trustee. In our opinion, such types of relationships are not analogous to that shown in the instant case. We thus hold that the penalty interest award should not have been allowed.

■ By point number twelve, appellee contends that the trial court erred in failing to make requested additional and amended findings of fact and conclusions of law. The trial court may file additional findings of fact and conclusions of law if properly requested; however, it is not required to make findings on evidentiary matters or on every controverted fact or on findings that are in conflict with the original findings. Wade v. Taylor, 228 S. W.2d 922 (Tex.Civ.App.—Amarillo 1949, no writ). In any event, the record as a whole does not establish that the appellant has suffered prejudice or injury by the court's failure to make the additional requested findings, and thus no reversible error is shown. Wagner v. Riske, 142 Tex. 337, 178 S.W.2d 117 (1944). Accordingly, appellant's twelfth point is overruled.

■ By cross-point, appellee complains of the failure of the judgment to include an award of attorney's fee. We may consider the cross-point since appellee apprised the court of her dissatisfaction with the judgment by noting her exception and notice of appeal in the judgment. Maloney v. Strain, 410 S.W.2d 650 (Tex.Civ.App.— Eastland 1966, no writ). We note that the court found that timely written demand for payment for personal services rendered and labor performed was made within the meaning of Article 2226, Texas Revised Civil Statutes. However, the court made no finding concerning the appellee's entitlement to an award for attorney's fee. Appellee did not object to the findings concerning the failure to award attorney's fee. Thus, it is presumed that the omitted element or elements were found in such a way as to support the judgment disallowing attorney's fee, providing the presumed finding is supported by the evidence. Paul v. Johnson, 314 S.W.2d 338 (Tex.Civ.App. —Houston 1958, writ dism'd).

In this case, the evidence does not appear to be in accord with such presumed finding. Harvel testified she retained attorney Garner to prosecute this suit and that she was obligated to pay him. Garner testified that he expended 25⅛ hours in preparation and prosecuting the case and that the Texas Bar Association minimum fee schedule sets a fee of $40 per hour for such work or ⅓ contingent fee. Also, he stated that he and Harvel agreed to a ⅓ contingent fee. These matters were not controverted. Further, he prosecuted the cause to judgment.

■ The term "reasonable attorney's fees," as used in Article 2226, has been construed to mean such fee as a litigant would pay his own attorney for prosecuting the case and not a speculative or contingent fee based on uncertainty of the litigation. Southland Life Ins. Co. v. Norton, 5 S.W.2d 767 (Tex.Comm'n App. 1928, holding approved); Wisznia v. Wilcox, 438 S.W.2d 874 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n.r.e.). There is evidence in the record to support the findings that a demand in writing was made upon Realtor 30 days prior to institution of suit and that the suit was for personal services rendered or labor performed as contemplated by Article 2226. It is well settled that a suit where recovery is sought for personal services or labor rendered will entitle one under Article 2226 to attorney's fee even if the suit is for breach of a special contract. Danaho Refining Company v. Dietz, 398 S.W.2d 307 (Tex.Civ.App.—

**894**

Corpus Christi 1965, writ ref'd n.r.e.); Huff v. Fidelity Union Life Insurance Company, 158 Tex. 433, 312 S.W.2d 493 (1958). It has been held that a suit involving brokerage or real estate commissions is one for personal services and thus attorney's fees are recoverable. See Van Zandt v. Fort Worth Press, 359 S.W.2d 893 (Tex.1962) and Huff v. Fidelity Union Life Insurance Company, supra.

■ In view of the foregoing, we hold that the evidence is sufficient to support an award of reasonable attorney's fee, and to that extent appellee's cross-point is sustained. Since it is for the fact-finder to determine a reasonable fee, this portion of the judgment is severed, reversed and remanded to the trial court with instructions to determine a reasonable attorney's fee. Huffman v. Cox, 315 S.W.2d 319 (Tex. Civ.App.—Austin 1958, rev'd on other grounds); Kost v. Lancaster, 414 S.W.2d 514 (Tex.Civ.App.—Houston 1967, writ ref'd n.r.e.).

From our examination of the judgment and the court's findings, we have determined that the sum of $7,699.09 awarded to the plaintiff included $29.60 on the Gallant transaction, $117.27 on the Arbuckle transaction and $6,791.25 together with 10 per cent penalty interest from May 4, 1972 to the day of trial on the Bacarrat transaction. In view of our holding that the penalty interest is not allowable, we reform the judgment accordingly. Thus, the judgment is reformed by reducing the same to $6,938.12, the total of the basic sums above mentioned with respect to the Gallant, Arbuckle and Bacarrat transactions. As we construe the judgment as drafted, attorney's fee was denied. In view of our holding that reasonable attorney's fee should be awarded in this case, the judgment insofar as it denies attorney's fee is severed, reversed and remanded.

In accordance with the foregoing, the judgment of the trial court is affirmed as reformed in part, and reversed and remanded in part.